784 So.2d 261 (2001)
Demetrius McDONALD, Appellant
v.
STATE of Mississippi, Appellee.
No. 1999-KA-01680-COA.
Court of Appeals of Mississippi.
May 1, 2001.
*262 Joe N. Tatum, Jackson, Attorney for Appellant.
Office of the Attorney General by Scott Stuart, Jackson, Attorney for Appellee.
Before KING, P.J., PAYNE, and IRVING, JJ.
KING, P.J., for the Court:
¶ 1. McDonald appeals a jury's verdict of guilty of simple assault on a police officer and the trial court's sentence of five years in the custody of the Mississippi Department of Corrections, payment of court costs and fees before the sixtieth day following his release from custody with five years of supervised probation. Finding that the trial court erred in refusing to grant a lesser-included offense instruction, we reverse and remand for a new trial consistent with the terms of this opinion.

FACTS
¶ 2. On March 1, 1998, Officer Nathaniel Johnson responded to a call of an alleged fight. Upon arriving at the scene, Officer Johnson met Demetrius McDonald who matched the clothing description given to the officer. The officer directed McDonald to come to him. McDonald began to walk away and informed the officer that he had a gun in his pocket that was ready to fire. Johnson reached and felt something hard in McDonald's pocket. Johnson backed away and called for police back-up. McDonald was mumbling as he began to walk away from Officer Johnson. Johnson again instructed McDonald to come towards him and give up his weapon. Three other officers arrived on the scene and continued to request that McDonald stop walking away. Johnson testified that McDonald kept mumbling, "They did me wrong."
¶ 3. Johnson testified that he heard McDonald make threats to him and the other officers. According to Johnson, McDonald stated that he too had a weapon, and that if the officers pulled their firearms, he would pull and shoot his firearm. When this statement was made, McDonald's hands were in his pockets. Johnson testified that McDonald had taken his gun from his pocket just before Officer Otha Brown grabbed him. Johnson stated: "By the time he pulled it [his gun] out, put it down to his side, Officer Brown grabbed him and the gun, he started doing his hand like that back and forth."
¶ 4. Officer Otha Brown also testified about the events of the evening of March 1, 1998. Brown stated that he got out of his car, ran past McDonald and grabbed him. Further Brown testified: "When I grabbed him, he had a gun in his hand. And I kept telling him to give me the gun, give me the gun. And he kept saying, no, they done him wrong ... after I kept asking him, ... he went on and gave it to me." Brown first saw the gun in McDonald's right hand after having grabbed him. Brown stated that when he first grabbed McDonald putting him in a "bear hug" hold, that they were tussling from *263 side to side with McDonald having the gun in his hand. On cross-examination, Brown was asked:
Q. From the way that you approached Mr. McDonald and grabbed him in a bear hug from behind and he was facing away from the officers, it was not possible for him then to point a weapon at him, correct?
He answered:
A. I'm not going to say it was not possible for him to point a weapon. But when I had him from the back, we was turning from side to side, and the officers were behind me. So he could have been doing that with his hand. I don't know what he was doing with his hand.
Q. But you didn't see him point the weapon?
A. No, I didn't see him point.
Next, Officer Benjamin Lee Drake had this to say about the incident:
Officer Johnson had advised us that the defendant had a gun in his right pocket. At that time, we had told Mr. McDonald to take his hand out of his pocket. He turned and started walking away from us. He started saying that we better pull our s because he was going to pull his and he would kill all of us.... And he kept walking, and we kept telling him, `Take your hand out of your pocket. Stop....' A few seconds later, the gun come out of his pocket. He pulled the gun out. I advised the other officers, he's got the gun out. And about that time, Officer Brown had run around and had gotten Demetrius in like a bear hug. They kind of tussled back and forth. At that time, Demetrius started swinging the weapon with his arm.
Drake indicated that McDonald's action in swinging the gun placed him in fear of his life. Drake stated that McDonald finally relinquished the gun. On cross-examination, Drake testified that McDonald did not directly point the gun at him. Rather, Drake stated the gun "passed" him. Drake conceded that the gun had not "passed" him until Officer Brown had gotten McDonald in a bear hug and that is when McDonald began swinging the gun to and fro. In addition, Drake testified that when McDonald first took the gun out of his pocket, he had it near his side and pointed downward.
¶ 5. A Madison County jury found McDonald guilty of simple assault on a police officer. After the trial court denied his post-trial motions, McDonald perfected this appeal.

ISSUES
¶ 6. On appeal, McDonald raises five issues which he asserts entitle him to have his case either dismissed and he be discharged, or reversed and remanded for a new trial. Having determined that the trial court committed reversible error, we will only address those two issues which are pertinent to our resolution of this case, namely (1) that the trial court erred in refusing to grant a lesser-included offense instruction and (2) that the trial court erred in refusing to recuse himself from the case.

DISCUSSION

1. Lesser-Included Offense Instruction
¶ 7. The dispositive issue in this case involves McDonald's assertion that the trial court erred in refusing a lesser-included offense instruction of resisting arrest. McDonald submitted a lesser-included instruction of resisting arrest which the trial court refused. He asserts that the trial court erred because there was ample evidence on which the trial court had to base its decision to grant a lesser-included offense instruction and that its refusal to do so was error. McDonald maintains that *264 the evidence only supports the fact that he failed to relinquish a firearm, not that he actually pointed a firearm at any one.
¶ 8. The State counters that there was no evidentiary basis for the lesser-included instruction offered and that viewing the evidence in a light most favorable to the verdict, no reasonable juror could have not found him guilty of simple assault on a law enforcement officer. In support of its position, the State points out that officers verified that McDonald did have a gun in his pocket, pulled it out and waived it and pointed it at them generally. Other testimony revealed that McDonald threatened to kill the officers.
¶ 9. A trial court may only grant an offered jury instruction where evidence has been presented which supports the instruction. Perry v. State, 637 So.2d 871, 877 (Miss.1994). The trial court may instruct the jury with reference to lesser-included offenses when warranted by the evidence. Id. Notwithstanding, such instructions may not be given indiscriminately or automatically. Murrell v. State, 655 So.2d 881, 885-6 (Miss.1995). Rather, a trial court should grant a lesser-included offense instruction after it has carefully considered the evidence and consequently is of the opinion that such an instruction is justified by the evidence. Id. In Murrell the supreme court further stated:
[A] lesser included offense instruction should be granted unless the trial judgeand ultimately this Courtcan say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Id. at 886 (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)).
¶ 10. Here, the trial court refused the following instruction:
If the State fails to prove, in this case, each and every element of the crime of simple assault upon a law enforcement officer beyond a reasonable doubt, you may continue to deliberate whether or not the Defendant is guilty of the crime of resisting arrest. A person is guilty of resisting arrest if by force, violence, or threats, or in any other manner, [he] resists his lawful arrest.
¶ 11. The testimony established that (1) the police officers attempted to arrest McDonald, (2) McDonald walked away from the officers and (3) struggled with Officer Brown. Given this testimony, we find that there was a sufficient evidentiary basis in the record to support an instruction on resisting arrest. Had that instruction been given, it is quite possible that a jury might have found McDonald guilty of resisting arrest rather than simple assault on a police officer. The evidence was such that a jury of reasonable minds could have concluded that McDonald resisted the officers efforts to arrest him. Accordingly, we reverse and remand this case for a new trial.

2. Recusal of trial judge
¶ 12. The trial judge in this case was the duly elected district attorney when McDonald was indicted. He acknowledged this matter on the record, disavowed any knowledge of the facts of this case, and offered McDonald the opportunity to proceed to trial on that day, if he waived his right to request recusal. In response to that request, McDonald agreed to waive his rights to have Judge Kitchens recuse himself, and proceeded to trial.
*265 ¶ 13. Pursuant to Cannon 3 C(1) of the Code of Judicial Conduct, "[a] judge should disqualify himself in a proceeding in which his impartiality might reasonably be questioned, ..." Under the decision in Frierson v. State, 606 So.2d 604, 606 (Miss. 1992), the trial judge should have recused himself on his own motion. He did not recuse himself, but instead accepted McDonald's waiver of objection. This Court finds that waiver to have been effective under Banana v. State, 635 So.2d 851, 852 (Miss.1994). However, this Court believes that the better reasoned approach would have been to recuse and avoid even the appearance of conflict.
¶ 14. Upon remand, this Court suggests that the trial judge, consistent with the mandate of Cannon 3 C of the Mississippi Code of Judicial Conduct, recuse himself from further participation in this matter.
¶ 15. THE JUDGMENT OF THE MADISON COUNTY CIRCUIT COURT OF CONVICTION OF SIMPLE ASSAULT ON A POLICE OFFICER AND SENTENCE TO FIVE YEARS REVERSED AND THE MATTER IS REMANDED FOR A NEW TRIAL IN ACCORDANCE WITH THE TERMS OF THIS OPINION. ALL COSTS OF THIS APPEAL ARE ASSESSED TO MADISON COUNTY.
PAYNE, LEE, IRVING, and MYERS JJ., concur. SOUTHWICK, P.J., concurs with separate written opinion joined by McMILLIN, C.J., and THOMAS, J. BRIDGES and CHANDLER, JJ., not participating.
SOUTHWICK, P.J., Concurring.
¶ 16. The majority finds that we should reverse because of the failure of the trial court to give an instruction on resisting arrest. I agree with the conclusion but not completely with the reasoning.
¶ 17. The Court also says that the trial judge should have recused himself. I disagree. It is on the latter point that I make an initial brief statement, then address my central concern, and close with answering two objections about the indictment and the statute that if true, would require relief.

1. Recusal of trial judge
¶ 18. At the end of the trial, the defense moved for the judge to recuse himself from any further proceedings dealing with this case. Judge John Kitchens, who presided over the trial, had been the district attorney at the time that McDonald was indicted. That motion was denied.
¶ 19. Canon 3 of the Code of Judicial Conduct requires a judge to recuse himself "in a proceeding in which his impartiality reasonably might be questioned." The Supreme Court has found that absent a waiver by the accused, a judge is required to recuse himself when he had been prosecuting attorney at the time of the indictment. Frierson v. State, 606 So.2d 604, 606 (Miss. 1992). An explicit waiver by the defendant removes the obligation for recusal. Banana v. State, 635 So.2d 851, 854 (Miss. 1994). In Banana, as here, the trial judge specifically asked the defendant if he had any objection to the judge's presiding over the case even though he had been the prosecuting attorney at the time of indictment. Just as in Banana, McDonald stated that he did not object. The need to recuse was waived. The issue can be reconsidered on remand if McDonald renews it.

2. Lesser offense instruction
¶ 20. The offense of resisting arrest is not a lesser included offense to simple assault on a police officer since the need to prove an attempt to arrest that is included in the lesser offense is not an element of *266 the greater offense of assault. Nonetheless, the Mississippi Supreme Court has adopted a rule that an accused in certain circumstances is entitled to an instruction on an offense with a lesser penalty that grows out of the same set of operative facts. Mease v. State, 539 So.2d 1324, 1329 (Miss.1989). This has been applied to the twin offenses of resisting arrest and simple assault on a police officer. Murrell v. State, 655 So.2d 881, 886 (Miss.1995). In effect an accused can indict himself for an offense that is not within the actual indictment but is potentially within the facts and carries a lesser sentence. Still, to require an instruction there must be "some evidence in the record from which a jury could, other than by mere surmise, [1] find him not guilty of the crime with which he was charged and [2] at the same time find him guilty of a lesser included offense." Toliver v. State, 600 So.2d 186, 192 (Miss.1992). Because of cases such as Murrell, I agree that this same approach applies to lesser non-included offenses. I examine both parts of the principle.

a. Evidence of greater offense of simple assault.
¶ 21. Only one fact is disputed about proof of the greater offense: did McDonald ever pull the gun from his pocket? I examine the relevant undisputed facts leading up to the contested one. Someone matching McDonald's description was the subject of a report to police about a fight. When the first police officer arrived, he approached McDonald to question him. "Come here," the officer said. McDonald responded "[F]or what?" Similar additional words were exchanged, all the time while McDonald was walking away. The officer felt a hard object in McDonald's pocket soon after he said, "I got a gun in my pocket, and it's ready to fire." McDonald kept his hand in that pocket, which caused the officer to back away and call for additional police support.
¶ 22. Among the assisting officers who then arrived was Otha Brown, who grabbed McDonald from behind. With his upper arms penned, McDonald swung his forearms back and forth. Brown, holding the accused from behind, could not see if anything was in his hands. Two of the other officers testified that McDonald had pulled the gun from his pocket and as the struggle continued the barrel of the gun occasionally pointed at Officer Drake. Drake was the victim of the simple assault named in the indictment. McDonald eventually released the weapon. It was loaded.
¶ 23. After the State rested its case, the defense called one witness, Thomas Blount. Blount resided across the street from the place where the altercation occurred. His testimony was that while he was standing outside his home, he saw the officers walking behind McDonald but never saw McDonald with a weapon. Several questions about his proximity to the scene and the strength of his eyesight were asked, and the answers did not raise significant questions about his powers or opportunity for observing the incident.
¶ 24. The version of simple assault that was charged was an attempt "by physical menace to put another in fear of imminent serious bodily harm," which has an enhanced penalty when the person menaced is a police officer acting in the scope of his duties. Miss.Code Ann. § 97-3-7(1)(c) (Rev.2000). The specific manner of physical menace was "by refusing to relinquish possession of a firearm while at the same time threatening Officer Drake with bodily harm...."
¶ 25. The factual issue that McDonald alleges was questionable on simple assault was whether he was either attempting to surrender the gun or else never removed the gun at all. Whether that factual doubt *267 is relevant can be examined this way. Two witnesses testified that McDonald (a) had his hand on a loaded gun in his pocket, (b) threatened on several occasions to use it, and (c) pulled it out and pointed it at least at Drake. A third officer agreed about (a) and (b), but could not see what was in McDonald's hands. A defense witness says (c) never happened. That still leaves unchallenged the first two pieces of evidence. When all the evidence was admitted, the jury knew that McDonald had a loaded gun. The jurors also had unchallenged testimony that he made certain threats that I will next describe.
¶ 26. The first officer on the scene, with my substitutions for the profanity, quoted McDonald as saying "Y'all got y'all's [guns]; I got my [gun]. You put it, I'll fire, I'll shoot." The officer stated that this meant if the officers removed their guns from their holsters, he would pull out his gun and shoot. The evidence indicates that some or all the officers had their guns drawn, but after Officer Brown grabbed McDonald they reholstered or pointed their guns to the ground to avoid endangering their fellow officer. Officer Drake recalled McDonald's saying "I'll kill all of you." It appears that Officer Drake was named as the victim of the assault in the indictment since he was the person in the line of fire of the waving gun. Even if the jurors chose to believe that the removal of the gun from McDonald's pocket was not proved beyond a reasonable doubt, then Drake still was one of the officers adjacent to the accused when he issued this general warning.
¶ 27. I find that the fact issue of whether the gun was ever drawn might cause a jury to doubt that McDonald's leaving the gun in his pocket while making a threat was "physical menace." Unless McDonald was "attempting by physical menace to put [Drake] in fear of imminent serious bodily harm," he was not guilty. In one precedent, a woman was being assaulted by a man with a gun. Her young daughter Wendy was nearby and started to scream. The accused pointed the gun at the girl and told her to "shut up." The Supreme Court found that this "evidence shows conclusively that Brown attempted by physical menace to put Wendy in fear of imminent serious bodily harm." Brown v. State, 633 So.2d 1042, 1043 (Miss.1994). What I do not find so conclusive is if the weapon is never drawn and remains in the accused's pocket that physical menace has occurred.
¶ 28. An additional cause of some potential doubt is that one of the quoted threats was conditionalif police removed their weapons, McDonald would remove his and shoot. Jurors might have wondered if the conditional language made the threat "imminent" as is required.
¶ 29. "Physical menace" demands something more than words. If jurors accepted the witness's testimony as raising doubts that the weapon was ever drawn, they may also have found that the remainder of what McDonald did was not sufficiently physical and not adequately directed at Officer Drake to constitute physical menace as to him. Thus the first step in deciding whether the lesser non-included offense instruction had to be given is satisfied. There may have been a reason beyond mere surmise for a juror not to have found guilt of the greater offense.
¶ 30. The remaining question is whether resisting arrest was a valid alternative on which McDonald in effect could indict himself by requesting the instruction.

b. Evidence to support lesser non-included offense instruction on resisting arrest
¶ 31. No party is entitled to an instruction unless it is supported by the evidence. *268 To be guilty of the lesser offense, McDonald would have needed forcefully to be resisting his lawful arrest. Miss.Code Ann. § 97-9-73 (Rev.2000). The fact that there was a physical encounter with police does not by itself create the factual basis for the instruction. The most helpful means to examine this part of the question is to consider it in light of this hypothetical change in the procedure followed below. If a valid instruction on resisting arrest had been given and the jury had convicted him on it, would there have been sufficient evidence in the record to sustain the conviction? McDonald provided resistance, but was he resisting an arrest?
¶ 32. There is a statute that an arresting officer who has no arrest warrant is to inform the suspect of the object and cause of arrest, except when the accused is in actual commission of the offense. Miss. Code Ann. § 99-3-7(1) (Rev.2000). The initial encounter between an officer and McDonald was for purposes of a brief investigatory stop. The officer was not serving an arrest warrant and did not yet have a basis to arrest McDonald. A person may well not be free to leave during a brief investigatory stop. Estes v. State, 533 So.2d 437, 441 (Miss.1988). Yet whatever that might mean for Fourth and Fifth Amendment purposes, that is not an arrest for purposes of the resisting arrest statute. Haddox v. State, 636 So.2d 1229, 1234 (Miss.1994). If a person does not comply with a request to submit to an investigatory stop, the citizen's resistance to an officer's force might not initially be resisting arrest, but his actions may soon create a basis to arrest.
¶ 33. Whether an officer is attempting to arrest a person is a question of fact. In earlier case law the Supreme Court applied the statute that an officer is to inform someone of the object and cause of the arrest. Hinton v. Sims, 171 Miss. 741, 158 So. 141, 143 (1934), discussing what is now Miss.Code Ann. § 99-3-7(1) (Rev. 2000). The Court said that after the arrest is made the cause and object could be explained, but "except in rare cases," during the act of arrest an officer should warn a person "that he consider himself under arrest." Hinton, 158 So. at 143. In Hinton the uniformed officer only told the suspect to raise his hands without telling him that he was being arrested. The Court called that arrest "illegal." Id. I do not find that any longer to be the law. "It is not necessary that formal or particular words be used, for the fact of arrest may be shown by surrounding facts and circumstances." Gearing v. State, 185 So.2d 652, 654 (Miss.1966). One case relied on Gearing in determining that an arrest was made as soon as a city marshal told a person to step into the marshal's office. Brief questioning occurred, but the evidence later indicated that all along the marshal had been intending to arrest the man. The court found that "no formal declaration of arrest is required," and that what the officer intended and what the defendant understood were both factors. Reed v. State, 199 So.2d 803, 808-809 (Miss.1967).
¶ 34. When did a legal basis to arrest McDonald arise? The initial threatening remarks appeared directed towards someone other than the officer. "They did me wrong," he said, and he was going to kill someone. He ultimately made threats to the officers, and may or may not have pulled his gun. McDonald is not accused of having swung at or struck an officer. Any assault would have been from the physical menace of not relinquishing the gun. I find that somewhere in that struggle, probable cause to arrest for assaulting the officers may have arisen, or perhaps, probable cause to arrest for "failure to obey the commands or requests of a law enforcement officer, [which] is a punishable *269 offense in Mississippi." Merritt v. State, 497 So.2d 811, 814 (Miss.1986), citing Miss.Code Ann. § 97-35-7 (Rev.2000).
¶ 35. Applying Gearing, as the struggle continued both McDonald and the officers may have understood that a simple desire to question had been transformed into an effort to arrest. I cannot agree that there is any evidence at the beginning of this episode to support the resisting arrest instruction, but there was by the end. Since the effort to arrest had to be lawful, I have also addressed that there was probable cause to believe that an offense was occurring.
¶ 36. Having reached this conclusion, I do not then conclude that a reasonable juror had to find McDonald guilty of assault just because a lawful arrest for assault is what he would have been resisting. The resisting arrest instruction was still needed. A juror might not have found McDonald guilty of simple assault if a reasonable doubt about pulling and pointing the gun was found. However, regardless of a later jury verdict, the arrest would have been lawful and its resistance unlawful if the officers had probable cause to believe an offense was being committed.
¶ 37. Finally, I note another problem created by this whole line of precedents, a problem noted first in the present case by the trial judge. He refused the lesser non-included offense instruction since Officer Drake was the named victim in the simple assault indictment and "I don't see [McDonald's] resisting [an arrest by] Lee Drake in this case." However, once cases like Murrell disconnected the lesser offense instructions from the indictment and let an accused find some other charge that could be made from the event, there is nothing to say that the lesser non-included offense has to be against the same victim.
¶ 38. That still leaves us with identifying the operative facts. Do any of the facts necessary for the accused's suggested instruction need to be part of the evidence of the offense in the indictment? If an accused sped away from the rape and murder for which he is being tried, may he get a lesser non-included offense instruction on speeding? The Court has said that an accused "is of right entitled to have the jury instructed regarding any offense carrying a lesser punishment arising out of a common nucleus of operative fact with the scenario giving rise to the charge laid in the indictment." Mease v. State, 539 So.2d 1324, 1329 (Miss.1989). "Common nucleus," "operative," and "scenario that gave rise to the charge" seem important. Are they useful limitations? A look at this case demonstrates the difficulties.
¶ 39. The underlying factual issue of arrest was simply not explored or even mentioned at trial. Ironically considering McDonald's insistence on the instruction, he was successful in blocking evidence on the original disturbance that caused the first policeman to want to question McDonald. I have found that the factual issue of an attempt to arrest was raised by McDonald's reactions to the officers' desire to subdue him, but it definitely was not fully examined. It becomes a deciding issue in the case, but the State did not meaningfully address it and McDonald actively tried to impede its presentation. An assistant prosecutor handling a resisting arrest prosecution who put on no more evidence than occurred in this trial of the arrest itself might get fired for incompetence. The State might even suffer a directed verdict, just because of the broad discretion of trial judges and the flimsiness of the evidence on attempt to arrest. Yet there was some evidence here.
¶ 40. In the original case that unleashed us on her journey into non-included offense instructions, the Court said "[w]hether simple assault is formally a *270 lesser included offense to rape is not the point." Griffin v. State, 533 So.2d 444, 447 (Miss.1988). With respect for the Court and the author of that opinion, that should be and had before then been exactly the point. If the elements on the lesser offense are all in the greater offense, then what is in the lesser offense instruction will necessarily have been examined fully in the trial.
¶ 41. The problems of this case, when the lesser non-included charge was based on factual issues that were not meaningfully developed, are one more set of reasons that this whole area of law has proved perhaps unexpectedly troublesome. The evidence here of an effort to arrest was incidental at best, though it did exist. A jury should not be asked to determine the guilt of a person on an offense for which he was not even tried.

3. Overt act
¶ 42. McDonald contends that the indictment should have been dismissed because the charge on simple assault was incomplete. This assault was an "attempt by physical menace to put another in fear of imminent serious bodily harm." Miss. Code Ann. § 97-3-7(1)(c) (Rev.2000). The Supreme Court has defined traditional "attempt" to require an overt act ..." Greenwood v. State, 744 So.2d 767, 769 (Miss. 1999). The overt act alleged in the indictment was the refusal "to relinquish possession of a firearm while at the same time threatening Officer Drake with bodily harm."
¶ 43. The indictment charged McDonald with an omission, i.e., refusing to relinquish the weapon. A failure to relinquish a gun that one is holding is both overt and an act.

4. Vagueness of statute
¶ 44. McDonald's final assignment of error challenges the constitutionality of the statute under which he was convicted. He argues that the word "menace" is unconstitutionally vague.
¶ 45. A statute is required to give adequate warning so an accused would have understood what conduct was required to conform to society. State v. Mays, 329 So.2d 65, 66 (Miss.1976). A "statute which either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application violates the first essential of due process." Meeks v. Tallahatchie County, 513 So.2d 563, 566 (Miss.1987), quoting Connally v. General Constr. Co., 269 U.S. 385, 391, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The test for criminal statutes is whether a reasonable person of ordinary intelligence would be on notice as to what conduct is required or forbidden. State v. Burnham, 546 So.2d 690, 692 (Miss.1989).
¶ 46. McDonald contends that "physical menace" can mean anything from "annoyance to some danger." Not so. The statute reasonably interpreted requires physical action that is intended to create fear of immediate bodily harm. This provision has been in our statues since 1974. 1974 Miss. Laws ch. 458, § 1. The language appears to have been taken from the identical provision in the Model Penal Code. Model Penal Code § 211.1 (Official Draft, 1962). I find no logical vagueness nor any precedent that such an argument has been presented in this State or succeeded in any State that adopted this description of assault. The statute is valid.
McMILLIN, P.J., and THOMAS, J., join this separate opinion.