967 So.2d 670 (2007)
Charles Patrick GRAHAM, Appellant
v.
STATE of Mississippi, Appellee.
No. 2006-KA-00518-COA.
Court of Appeals of Mississippi.
October 23, 2007.
*672 Jonathan Michael Farris, attorney for appellant.
Office of the Attorney General by Jacob Ray, attorney for appellee.
*673 Before LEE, P.J., IRVING and CHANDLER, JJ.
CHANDLER, J., for the Court.
¶ 1. Charles Graham was convicted of two counts of the simple assault of a peace officer and sentenced to serve two consecutive five-year sentences in the custody of the Mississippi Department of Corrections. Aggrieved, Graham appeals. He asserts the following issues:
I. The State's amendments to the indictments on the day of trial were substantive
II. The court should not have allowed the State's jury instruction S-1A
III. It was error for the court to refuse the defense's jury instructions D-4, D-5, D-6, D-7, and D-8
IV. The court erred by refusing to grant his motions for directed verdict and a peremptory instruction and by denying his motions for a judgment notwithstanding the verdict or a new trial
V. There was cumulative error sufficient for reversal.
¶ 2. Finding no error, we affirm.

FACTS
¶ 3. Charles Graham was released from the Forrest County Regional Jail on October 3, 2005. Between 5:00 and 6:00 p.m., approximately three hours after his release, he returned to the jail only to find the doors locked. Using the intercom, he demanded entrance so that he could obtain his property, which had been stored there while he was incarcerated. An officer informed Graham that the doors were locked for the shift change and that he should return after the shift change to get his property.
¶ 4. Instead of waiting, Graham proceeded to kick the door, thereby breaking the lock. He entered the facility and proceeded past the main desk of the Forrest County Sheriff's Department, ignoring Officer Orlando Dantzler's commands to stop. Graham continued through the first entry door of the jail before he was stopped at the second entry door, which was a metal mesh gate that was sealed with an electronic lock.
¶ 5. At this point Officer Dantzler and a corrections officer, John Simmons, approached Graham, who began to kick, hit, and threaten them. After being subdued, Graham was placed under arrest and taken into custody at the jail.
¶ 6. Graham was indicted by a Forrest County Grand Jury on two counts of simple assault of a peace officer. At a trial on March 14, 2006, the jury convicted Graham of both counts, and the court sentenced him to serve two consecutive five-year sentences.

ISSUES AND ANALYSIS
I. Amendment of indictment
¶ 7. Graham's first argument is that the court erred by allowing amendment to the indictments on the morning of the trial. He claims the amendments to the two indictments were substantive and that changing them on the day of trial prejudiced his defense.
¶ 8. Whether an indictment is defective is a question of law, and we review such questions of law under a de novo standard. Spears v. State, 942 So.2d 772, 773(¶ 5) (Miss.2006). It is permissible for a court to amend an indictment to correct a defect of form, but only the grand jury may correct a substantive defect. Id. at 774(¶ 6). An amendment is to form if it is immaterial to the merits of the case and does not prejudice the defense. Pool v. State, 764 So.2d 440, 443(¶ 10) (Miss.2000). To determine if an amendment prejudices *674 the defense, we ask if the defense is equally applicable after making the amendment. Id.
¶ 9. The original indictments charged that Graham "did unlawfully, feloniously and willfully attempt by physical menace to put Orlando Dantzler, in fear of imminent serious bodily harm by arming himself with a pen and bottle of bleach while kicking, hitting, and threatening Orlando Dantzler. . . ."[1] On the day of trial this was amended to delete the language "arming himself with a pen and bottle of bleach while." As amended, the indictment charged that Graham "did unlawfully, feloniously and willfully attempt by physical menace to put Orlando Dantzler, in fear of imminent serious bodily harm by kicking, hitting, and threatening Orlando Dantzler. . . ."
¶ 10. The State argued that the deleted phrase was merely a scrivener's error and had nothing to do with the charge. According to the State, there was another incident that did involve a pen and a bottle of bleach, and the indictment for that incident was typed at the same time. The phrase dealing with the pen and the bleach was supposed to be in the indictment for that charge, and it was mistakenly included in Graham's indictments. The judge heard this and found this to be reasonable. Clearly, the incident in the present case had nothing to do with a pen or a bottle of bleach, and the deleted language was immaterial to the merits of the case.
¶ 11. The provision, "arming himself with a pen and bottle of bleach while," is not substantive to the underlying charge of assaulting the officers with punches, kicks, and threats. Arguing that Graham was not armed with a pen or a bottle of bleach would not have been a defense at all under the original indictment, as such would not have negated the essential elements of punching, kicking, and threatening the officers. Graham's defenses to the charge were not affected by the deletion of the phrase; therefore, it was an immaterial amendment to the form of the indictment and not substantive.
¶ 12. Accordingly, we find that the trial court did not err in ruling that the amendments to Graham's indictments were to form and were not substantive. This issue is without merit.
II. Allowance of State's instruction
III. Refusal of defense's jury instructions
¶ 13. We will discuss these issues together as they involve an analysis of jury instructions.
¶ 14. Graham next complains of the trial court's allowance of the State jury instruction, S-1A, because it misstated the definition of "physical menace," which was a necessary element of the crime for which he was charged. Instruction S-1A reads as follows: "You are instructed on [phrase] `physical menace' as used in other instructions: a threat; or a declaration of a disposition to inflict immediate injury on another."
¶ 15. A defendant is entitled to have the trial court give jury instructions that present his theory of the case; however, the court may deny an instruction that misstates the law, is covered elsewhere in the instructions, or is not supported by the evidence. Ladnier v. State, 878 So.2d 926, 931(¶ 20) (Miss.2004). This Court does not review jury instructions in isolation, but it *675 will read them as a whole to determine whether the trial court properly instructed the jury. Milano v. State, 790 So.2d 179, 184(¶ 14) (Miss.2001). "When so read, if the instructions fairly announce the law of the case and create no injustice, no reversible error will be found." Id. (quoting Coleman v. State, 697 So.2d 777, 782 (Miss. 1997)).
¶ 16. To support Graham's claim that the definition of "physical menace" presented by the State was in error, he cites the concurring opinion in McDonald v. State, 784 So.2d 261, 267(¶ 29) (Miss.Ct. App.2001), which states that "physical menace" is "physical action that is intended to create fear of immediate bodily harm." Id. The majority in the same case states, "`Physical menace' demands something more than words." McDonald, 784 So.2d at 267(¶ 29).
¶ 17. In the present case, the definition given by the State failed to indicate that something more than words was necessary for physical menace as required by McDonald. The instruction stated that the jury could find physical menace from a "threat" or a "declaration of a disposition to inflict immediate injury on another." These two alternatives indicate that the required element of physical menace could be fulfilled by words alone. Because the jury instruction did not properly define physical menace under McDonald, it was in error for the court to grant it.
¶ 18. Nevertheless, we ultimately find the error to be harmless. To determine if a constitutional error is harmless, we must ask whether it appears, "beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained." Kolberg v. State, 829 So.2d 29, 50(¶ 39) (Miss.2002) (quoting Neder v. United States, 527 U.S. 1, 15-16, 119 S.Ct. 1827, 144 L.Ed.2d 35 (1999)). In Kolberg, the supreme court stated that the harmless-error analysis has often been applied "to cases involving improper instructions on a single element of the offense." Id. (quoting Neder, 527 U.S. at 9-10, 119 S.Ct. 1827).
¶ 19. Graham did not contest the State's evidence of his physical actions, and the State presented ample testimony that Graham attacked Officers Dantzler and Simmons. The State did not put on any evidence of mere words spoken by Graham, nor did Graham attempt to rebut the evidence that he hit, kicked, and threatened the officers. It was uncontradicted that Graham attacked them. Even though the instruction did allow the jury to find "physical menace" from words alone, the court's allowance of the instruction could not have contributed to the verdict and was harmless. All of the evidence indicated that Graham attacked the officers, and there was no evidence from which the jurors could have found physical menace under the State's definition but not under the proper definition. Graham's argument concerning the State's instruction, that it lowered the burden of proof for the State, therefore, is without merit.
¶ 20. Graham's next argument concerning jury instructions is that the trial court erred by refusing to grant the defense's instructions D-4, D-5, D-6, D-7, and D-8, which instructed the jury on the lesser-included offense of resisting arrest.
¶ 21. The supreme court has stated the standard for granting a lesser-included offense instruction:
[A] lesser included offense instruction should be granted unless the trial judgeand ultimately this Courtcan say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury *676 could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).
Stewart v. State, 909 So.2d 52, 55(¶ 10) (Miss.2005) (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)).
¶ 22. The defense presented no witnesses or evidence to this matter; therefore, the only relevant witnesses to when the altercation began are Officers Dantzler and Simmons, who apprehended Graham. The testimony of Officers Clark and Hudson, cited by Graham, is irrelevant to this issue. Officer Clark testified that he "didn't see him until they had hands on him." Officer Hudson similarly testified that he did not arrive until the officers were handcuffing Graham. With regards to the officers who initially apprehended Graham, and contrary to the testimony cited by Graham, both of them testified that they did not initially intend to arrest him.
¶ 23. Officer Dantzler was the first one to come into contact with Graham. He testified that he had dealt with Graham on numerous occasions and that he initially approached him in order to see what his problem was and to reason with him. He said that at no point during the initial altercation did he arrest Graham or tell him he was under arrest. On direct examination, he admitted he had numerous reasons to arrest Graham, but he maintained that he initially approached him to make contact and to stop him from going into the jail.
¶ 24. Next, Simmons, who was a corrections officer at the jail, testified that he assisted Officer Dantzler in apprehending and arresting Graham. He said that he and Officer Dantzler initially approached Graham to question him as to why he was there. It was at that point that Graham became belligerent and was then placed under arrest for striking the officers.
¶ 25. While Graham was entitled to present his theory of the case, he needed to put on evidence to support that theory. None of the witnesses that took the stand stated that the officers approached Graham with the intention of arresting him. Graham, furthermore, did not present any evidence or take the stand to contradict the officers' testimony that he was not initially under arrest. The only evidence that Graham can point to is the officers' testimony cited in his brief, which he takes out of context. The officers' testimony was that they approached Graham, and he attacked them. Only after Graham attacked Dantzler and Simmons was he placed under arrest.
¶ 26. From the evidence that was presented, we do not find the court erred in denying Graham's instructions on resisting arrest. This issue is without merit.
IV. Denial of motions
¶ 27. In his next point of error, Graham claims the trial court erred by refusing to grant a motion for a directed verdict, a peremptory instruction, a motion for a judgment notwithstanding the verdict, and a motion for a new trial.
A. Sufficiency of the evidence
¶ 28. In reviewing a trial court's denial of a motion for a directed verdict or a judgment notwithstanding the verdict we must look at the sufficiency of the evidence. Bush v. State, 895 So.2d 836, 843(¶ 15) (Miss.2005). We will ask whether the evidence shows "beyond a reasonable doubt that the accused committed the act charged and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction." Id. at *677 843(¶ 16) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). Taking the evidence in the light most favorable to the verdict, the question is whether a rational trier of fact could have found all the elements beyond a reasonable doubt. Bush, 895 So.2d at 844(¶ 16) (quoting Jackson v. Virginia, 443 U.S. 307, 315, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979)). Review of the denial of a peremptory instruction employs the same standard as the review of a directed verdict. Conners v. State, 822 So.2d 290, 293(¶ 5) (Miss.Ct.App.2001).
¶ 29. Mississippi Code Annotated section 97-3-7(1) (Rev.2006) provides that a person is guilty of simple assault if he "attempts by physical menace to put another in fear of imminent serious bodily harm." A person who is convicted of simple assault upon a law enforcement officer faces a fine of up to $1,000, up to five years imprisonment, or both. Id.
¶ 30. Considering the evidence in the light most favorable to the State, we find that there was sufficient evidence to convict Graham of simple assault of a peace officer. As we have previously stated, the State presented ample evidence that Graham attacked the officers with punches and kicks. The officers involved testified that they had no idea what the purpose of Graham's actions was or whether he was armed. They admitted that these unknowns and Graham's physical attacks did place them in fear of imminent serious bodily harm. Combined with the fact that Dantzler and Simmons were law enforcement officers, the State presented evidence on each of the elements of the crime. As such, there was sufficient evidence to deny Graham's motions for a directed verdict and a judgment notwithstanding the verdict and his peremptory instruction.
B. Weight of the evidence
¶ 31. A motion for a new trial questions the weight of the evidence. Bush, 895 So.2d at 844(¶ 18). Such a motion is within the discretion of the court, "which should be invoked only in exceptional cases in which the evidence preponderates heavily against the verdict." Id. (quoting Amiker v. Drugs for Less, Inc., 796 So.2d 942, 947(¶ 18) (Miss.2000)). "[W]e will only disturb a verdict when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." Id. When reviewing a denial of a motion for a new trial, we take the evidence in a light most favorable to the verdict. Id.
¶ 32. The evidence at trial shows that Graham broke into the building and proceeded to threaten and assault the police officers who were present. As we pointed out previously, the officers involved testified to the fact that they were in fear of serious bodily injury. While Graham may have pointed out that he did not in fact have a gun, and that Officer Dantzler was a larger man than he was, it was for the jury to decide whether or not to believe the officers' accounts. After reviewing the record we do not find that the verdict was against the weight of the evidence. It was, therefore, proper to deny Graham's motion for a new trial.
¶ 33. We find that there was sufficient evidence to convict Graham, and the guilty verdict was not against weight of that evidence. The denial of Graham's motions and the peremptory instruction were not in error. This issue is without merit.
V. Cumulative error
¶ 34. If there is no reversible error as to any part then there is no reversible error as to the whole. McFee v. State, 511 So.2d 130, 136 (Miss.1987). Errors that do not require reversal themselves may require reversal if, when taken *678 cumulatively, they deny the defendant the right to a fundamentally fair and impartial trial. Byrom v. State, 863 So.2d 836, 847(¶ 12) (Miss.2003). In any case in which a court finds harmless error or an error not sufficient in itself to warrant dismissal, the court may, on a case-by-case basis, determine whether the errors taken cumulatively warrant dismissal based on their cumulative prejudicial effect. Id. at 846(¶ 13).
¶ 35. The only error we found in this case was the trial court's allowance of the jury instruction that incorrectly defined physical menace. We found that error was harmless and therefore insufficient to warrant reversal. There are no other errors that, taken cumulatively with the improper instruction, would require reversal. This issue is without merit.
¶ 36. THE JUDGMENT OF THE CIRCUIT COURT OF FORREST COUNTY OF CONVICTION OF TWO COUNTS OF SIMPLE ASSAULT OF A PEACE OFFICER AND SENTENCE OF TWO CONSECUTIVE FIVE-YEAR SENTENCES IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO FORREST COUNTY.
KING, C.J., LEE AND MYERS, P.JJ., GRIFFIS, BARNES, ISHEE, ROBERTS AND CARLTON, JJ., CONCUR. IRVING, J., CONCURS IN RESULT ONLY.
NOTES
[1] The second indictment was identical except that it replaced "Orlando Dantzler" with "John Simmons."