RANDOLPH, Justice,
for the Court:
¶ 1. This case is before this Court on direct appeal of the Jones County Circuit Court’s conviction of Quincy Clayton for the murder of his wife, Alice. We find error in depriving Clayton submission of an alternative theory of defense, when his requested jury instruction on heat-of-passion excusable homicide was refused. Accordingly, we reverse and remand this case to the Jones County Circuit Court for a new trial.
FACTS
¶2. Clayton and Alice lived with their daughter, Valerie, and Alice’s sister, Mary Wash. On Sunday morning, June 21, 2009 (Father’s Day), all four members of the household were at home. Clayton was in the living room ironing his clothes for church. Wash testified that, as Clayton approached Alice, who was sitting at the table eating breakfast, Alice “got up and she had a knife, a steak knife, and she told him to get back, get away from me. And she swung at him twice. I didn’t see no cut or anything.” After that, Alice went to her bedroom. In contrast, Clayton testified that Alice took his clothes from the ironing board and threw them on the floor and that, as the argument escalated, Alice hit him and he pushed Alice down into a chair. He testified that Alice then retrieved a knife from the kitchen and returned to the living room and, as they continued fighting, Alice cut his shoulder with the knife. Clayton testified that he then sat down on the couch, and Alice ran to the couple’s bedroom. He further testified that he attempted to enter the bedroom to get his shoes so that he could go to church, and that “[ejverytime I go in that room to go get my shoes, she had that knife at me. She was stabbing at me and everything. She said, get out of my damn room, get out of my damn room.” He tried once more to enter the room and then sat on the floor in the hallway, at which point Alice “come out of that room ... [a]nd she started kicking me. She had that knife. That’s when I got stabbed in my side.... ” Alice went back into the bedroom and shut the door. Clayton again told her that he needed his shoes, and walked into the bedroom. Alice again threatened to cut him, and he left the room and got a 12-gauge shotgun from a nearby hall closet. Clayton testified that “I open that door and I got my gun. When I went in there, I didn’t mean to do it, but it happened” and “I picked up the gun and everything. You know, it was an accident.[1] I really — I was trying to bluff her so I could get my shoes to go to church.” He testified that when he walked into the *804 bedroom with the gun, Alice came at him with the knife drawn back.[2] Clayton then shot Alice. Clayton testified that “when she came at me with that knife and everything ... she like she going for the kill. She had the knife drawed back. I mean, she coming toward me. And I threw the gun up. And when the gun went off I said, dern. That’s what I said. And my wife fell down. And Mary said, oh, no you didn’t. And I heard her coming to the door. And I turned around and she met me in the hall.” After shooting Alice, Clayton ran from the house and drove away in his car. When he passed a Jones County Sheriffs car, Clayton flagged down Deputy Brian Buxton and said “I’m the man /all are looking for; I just shot my wife.” Testimony and photographic evidence at trial showed that Clayton sustained knife wounds on his left shoulder, wrist, and chest.
¶ 3. Valerie and Wash each gave a statement to the sheriffs office on the day of the shooting. Each said that she had heard the shooting, but neither explicitly stated that she had seen Clayton shoot Alice. However, at trial, Wash testified that she had seen Clayton shoot Alice.
ISSUE
¶ 4. Clayton raised numerous issues on appeal, including:
Whether the trial court committed reversible error by denying Clayton his right to alternative theories of defense.
Finding this issue dispositive, we decline to address the other issues.
LAW AND ANALYSIS
f 5. When reviewing a trial court’s grant or denial of a jury instruction, this Court considers the jury instructions “as a whole ‘to determine if the jury was properly instructed,’ giving abuse-of-discretion deference to the trial judge’s decision.” Flowers v. State, 51 So.3d 911, 912 (Miss.2010) (citations omitted).
¶ 6. We find that the trial court erred by failing to instruct the jury on Clayton’s alternative heat-of-passion theory. We have provided that “[a] defendant is entitled to have jury instructions given which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which [1] incorrectly states the law, [2] is covered fairly elsewhere in the instructions, or [3] is without foundation in the evidence.” Bailey v. State, 78 So.3d 308, 315 (Miss.2012) (citation omitted). Finding that the rejected instruction correctly stated the law, was not covered by another instruction, and had a foundation in the evidence, we find that Clayton was entitled to present it to the jury.
¶ 7. Clayton proposed two excusable-homicide instructions[3] based on Mississip *805 pi Code section 97-8-17. Section 97-3-17 reads as follows:
The killing of any human being by the act, procurement, or omission of another shall be excusable:
(a) When committed by accident and misfortune in doing any lawful act by lawful means, with usual and ordinary caution, and without any unlawful intent;
(b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation;
(c)When committed upon any sudden combat, without undue advantage being taken, and without any dangerous weapon being used, and not done in a cruel or unusual manner.
Miss.Code Ann. § 97-3-17 (Rev.2006). The jury was given Instruction D-4A. However, the jury was not given Clayton’s requested Instruction D-3A.
¶ 8. Without question, the pertinent language of Instruction D-3A correctly stated the law. The language of the rejected instruction directly parallels that of Mississippi Code Section 97-3-17(b), as follows:
Section 97-3-17(b)
The killing of any human being by the act, procurement, or omission of another shall be excusable: ... (b) When committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation _Miss.Code Ann. § 97-3-17 (Rev.2006) (emphasis added)
Instruction D-3A
.... the killing of any human being by the act of another shall be excusable when committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation.
In this case if you shall find from the evidence, or have a reasonable doubt therefrom, that Quincy Clayton, in the heat of passion, upon any sudden and sufficient provocation by Alice Clayton, accidentally fired the defendant’s shotgun, and said shotgun accidently and/or through misfortune killed Alice Clayton, then it is your sworn duty to find Quincy Clayton not guilty. (Emphasis added).
Thus, the rejected instruction was a correct statement of the law.
¶ 9. We likewise find that the theory that the rejected instruction sought to present was not covered elsewhere in the instructions. The sole excusable-homicide instruction presented to the jury (Instruction D-4A) included only the language of section (a), and made no reference to the heat-of-passion theory described in section (b). The given instruction (Instruction D-4A) included the following language:
but, that the fatal shot was fired through accident and misfortune,[4] at a time *806 when Quincy Clayton had no unlawful intent toward Alice Clayton, then the death of Alice Clayton is deemed by the law to have been an excusable homicide and you must find the defendant not guilty.
In contrast, the rejected instruction would have instructed the jury that the shooting was an excusable homicide if it found:
that Quincy Clayton, in the heat of passion, upon any sudden and sufficient provocation by Alice Clayton, accidentally fired the defendant’s shotgun, and said shotgun accidently and/or through misfortune killed Alice Clayton....
(Emphasis added.) Clearly, the language in section (b) describing excusable homicide based on heat of passion was not included in the given instruction, but was included in the rejected instruction. Accordingly, we find that the theory that the rejected instruction sought to present was not covered fairly elsewhere in the instructions.
¶ 10. Finally, Clayton’s instruction on accident and misfortune in the heat of passion was not without foundation in the evidence. We have provided that “[a] criminal defendant has a right to assert alternative theories of defense, even inconsistent alternative theories ” and that “[i]n homicide cases, the trial court should instruct the jury about a defendant’s theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the trial court’s failure to do so is error requiring reversal of a judgment of conviction.” Brown v. State, 39 So.3d 890, 899 (Miss. 2010) (emphasis added) (citation omitted); Maye v. State, 49 So.3d 1124, 1129 (Miss. 2010) (emphasis added) (citation omitted). We find that sufficient evidence existed for the jury to be instructed on accident and misfortune, for Clayton testified on direct that he “didn’t mean to do it” and, both on direct and during cross-examination, that “it was an accident.”[5] We further find that the evidence that Clayton and Alice were engaged in an escalating argument and that Alice had used a knife to threaten and cut Clayton moments before he shot her, and Clayton’s testimony that, just before he shot her, Alice “had a look in her face like I’m fixing to get you. She didn’t even look like my wife. She had the knife drawed back” provided a sufficient eviden-tiary foundation for Clayton to present a heat-of-passion theory to the jury.
¶ 11. In sum, the rejected instruction on heat-of-passion excusable homicide correctly stated the law, was not covered by any other instruction, and had a foundation in the evidence. Accordingly, Clayton was entitled to have the instruction given to the jury, and the trial court committed reversible error by failing to do so.
CONCLUSION
¶ 12. Finding that the trial court erred by failing to give Clayton’s requested jury instruction on his alternative, heat-of-passion defense, we reverse Clayton’s conviction and sentence, and we remand the case to the Jones County Circuit Court for a new trial consistent with this opinion.
¶ 13. REVERSED AND REMANDED.
WALLER, C.J., CARLSON AND DICKINSON, P.JJ., LAMAR, KITCHENS, CHANDLER, PIERCE AND KING, JJ., CONCUR.

. On cross-examination, Clayton again testified that "[i]t was an accident” and that “it wasn't intentional.”

. Before the police entered the bedroom, Betty Wash — Alice's daughter and Clayton’s stepdaughter — removed the knife from Alice's hand and placed it in or on top of a dresser in the bedroom.

. Instruction D-4A read as follows:
The Court instructs the Jury that if you believe from the evidence in this case, or have a reasonable doubt therefrom, that Alice Clayton died as a result of the discharge of a shotgun which was, at the time of the fatal shot, in the possession of Quincy Clayton but, that the fatal shot was fired through accident and misfortune, at a time when Quincy Clayton had no unlawful intent toward Alice Clayton, then the death of Alice Clayton is deemed by the law to have been an excusable homicide and you must find the defendant not guilty.
(Emphasis added.) Instruction D-3A read as follows:
The Court instructs the Jury that the killing of any human being by the act of another shall be excusable when committed by accident and misfortune, in the heat of passion, upon any sudden and sufficient provocation.
*805 In this case if you shall find from the evidence, or have a reasonable doubt therefrom, that Quincy Clayton, in the heat of passion, upon any sudden and sufficient provocation by Alice Clayton, accidentally fired the defendant’s shotgun, and said shotgun accidently and/or through misfortune killed Alice Clayton, then it is your sworn duty to find Quincy Clayton not guilty.
(Emphasis added.)

. The appearance of the words "accident and misfortune” in both proposed instructions does not mean that they presented the same excusable-homicide theory, as "by accident and misfortune” likewise appears in both sections of the statute, though each presents a different excusable-homicide ground. Miss. Code Ann. § 97-3-17 (Rev.2006).

. The trial court clearly found sufficient evidence of accident and misfortune, as the jury was given Instruction D-4A.