KITCHENS, Justice,
dissenting:
¶ 42. For nearly thirty years, the common law of the State of Mississippi has entitled' criminal defendants to have the juries they faced instructed on lesser-related offenses for which an evidentiary basis exists. But today, the majority discards that longstanding precedent by overruling Griffin v. State, 533 So.2d 444 (Miss.1988), and its progeny. Because I would hold that the rule articulated in Griffin is logical, fair, and often valuable in the quest for justice, and additionally, because Hye presented sufficient evidence to support an accessory-after-the-fact instruction, I respectfully dissent.
I. Lesser-related-offense jury instructions ought to remain viable under Mississippi law.
¶43. This Court is loathe to dispense with longstanding rules of law: “[A] former decision of this court should not be departed from, unless the rule therein announced is not only manifestly wrong, but mischievous.” McDaniel v. Cochran, 158 So.3d 992, 1000, 2014 WL 5419723, *8 (Miss. Oct.24, 2014); Caves v. Yarbrough, 991 So.2d 142, 151 (Miss.2008) (quoting *765 Forest Prod. & Mfg. Co. v. Buckley, 107 Miss. 897, 899, 66 So. 279 (1914)). To overturn a rule or decision of this Court requires satisfaction of a high burden:
In stare decisis generally, we look for error, but, finding that, we look largely in the area of public or widespread disadvantage. Ordinarily, we do not overrule erroneous precedent unless it is “pernicious,”[6] Stone v. Reichman-Crosby Co., 43 So.2d 184, 190 (Miss.1949); “impractical,” Robinson v. State, 434 So.2d 206, 210 (Miss.1983) (Hawkins, J., concurring); or is “mischievous[7] in effect, and resulting in detriment to the public.” Childress v. State, 188 Miss. 573, 577, 195 So. 583, 584 (1940). We look for “evils attendant upon a continuation of the old rule.” Tideway Oil Programs, Inc. v. Serio, 431 So.2d 454, 467 (Miss.1983).
Caves, 991 So.2d at 151-52 (quoting State ex rel. Moore v. Molpus, 578 So.2d 624, 635 (Miss.1991)). This Court will depart from precedent “when such departure is necessary to avoid the perpetuation of pernicious error.” Stone, 43 So.2d 184, 190.
¶ 44. Almost three decades have passed since this Court decided, in Griffin v. State, 533 So.2d 444 (Miss.1988), that a criminal defendant has the right to have the jury instructed on lesser offenses, related to the offense for which he or she was indicted, for which there is support in the evidence. While the victim in that case claimed that Griffin had raped her, Griffin offered a differing version of events:
Griffin testified that he paid [victim] $10.00 to perform oral sex on him. While she was so engaged, however, Griffin insulted [victim] by referring to her as “bitch.” [Victim] responded by squeezing his penis and testicles and, in an effort to free himself, Griffin began to strike her about the face.... The two reconciled, however, and immediately returned to their amorous activity.
Griffin, 533 So.2d at 446. Griffin requested, and the trial court denied, a lesser-offense instruction for simple assault. Id. at 447.
¶ 45. We reversed, stating:
This case presents a problem we encounter all too often. The prosecution charges the accused with a serious felony, only to have the defense offer a version of the facts rendering the accused far less culpable and, most important, subject to a far lesser punishment. If the evidence be such that a reasonable jury might have found the facts as the defense suggests them to have been, the accused of right is entitled to have the jury consider that option and be instructed to that effect.
Id. at 445. This Court continued that:
Whether simple assault is formally a lesser included offense to rape is not the point. We have before us a continuing factual scenario bracketed by a relatively brief period of time .... The facts suggest that Griffin may have been guilty of two possible courses of criminal conduct: rape and simple assault, the latter carrying a maximum penalty far less than the former. As the jury may on these facts reasonably have found Griffin guilty of simple assault but not guilty of rape — without any inconsisten *766 cy in evidentiary or ultimate findings, it follows that Griffin was of right entitled to have the jury instructed on the lesser offense of simple assault.
Id. at 447-48.
¶ 46. The majority finds the holding in Griffin and its progeny to be “pernicious.” But, in support of its argument, the majority relies on opinions from the Court of Appeals which have been critical' of the Griffin rule, on the Uniform Criminal Rules Study Committee which advocates for its abandonment, on the laws of states other than Mississippi, and on the United States Supreme Court’s interpretation of Rule 31(c) of the Federal Rules of Criminal Procedure.
¶ 47. ' The majority opens its attack on the well-established Griffin rule with a salvo of opinions from our Court of Appeals, where the rule roundly has been castigated: “[sjeveral members of this court have expressed concerns with Mississippi’s approach to lesser non-included offenses.” Gebben v. State, 108 So.3d 956, 971 (Miss.Ct.App.2012). According to the majority, “the concept of allowing lesser non-included offense instructions is grounded in neither the United States Constitution, the Mississippi Constitution, our statutes, nor Mississippi precedent; rather, it derives exclusively from this Court’s opinion in Griffin.” Maj. Op. ¶ 13 (citing Gebben, 108 So.3d at 970) (“The right to lesser non-included instructions in Mississippi is neither grounded in our state’s constitution nor its statutes or longstanding precedent.”); see also Brooks v. State, 18 So.3d 859, 875 (Miss.Ct.App.2008) (Carlton, J., dissenting), rev’d in part, 18 So.3d 833 (Miss.2009). I disagree.
¶48. Mississippi Code Section 99-19-5(1) provides:
On an indictment for any offense the jury may find the defendant guilty of the offense as charged, or of any attempt to commit the same offense, or may find him guilty of an inferior offense, or other offense, the commission of which is necessarily included in the offense with which he is charged in the indictment
[[Image here]]
Miss.Code Ann. § 99-19-5(1) (Rev.2007) (emphasis added). While Code Section 99-19-5(1) specifically contemplates lesser-included offenses, we recently have recognized that, “[a]s an exception, the Court has provided that ‘[a]n accused is entitled to a lesser-offense instruction only where there is an evidentiary basis in the record.’” Hall v. State, 127 So.3d 202, 205 (Miss.2013) (emphasis in original) (quoting Thomas v. State, 48 So.3d 460, 472 (Miss.2010) (citing McGowan v. State, 541 So.2d 1027, 1028 (Miss.1989))).
¶ 49. Although no statute or federal or state constitutional provision explicitly authorizes the giving of lesser-related-offense instructions, it cannot be said that such is not grounded in “Mississippi precedent.” To the contrary, Mississippi precedent is the source of lesser-related-offense instructions under our state’s law. This Court consistently has held in the nearly thirty years since Griffin handed down that, “[i]f a lesser offense, as opposed to a lesser-included offense, arises from the same operative facts and has an evidentia-ry basis, we have held the defendant is entitled to an instruction for the lesser charge the same as if it were a lesser-included charge.” Thomas v. State, 48 So.3d 460, 472 (Miss.2010) (quoting Moore v. State, 799 So.2d 89, 91 (Miss.2001) (citing Griffin, 533 So.2d at 447-48)) (emphasis added). See also Hall, 127 So.3d at 205 (only an accused, not the State, may request a lesser-offense instruction); Expose v. State, 99 So.3d 1141, 1147 (Miss.2012) (recognizing Griffin but finding evidentia-ry support for lesser-offense instruction lacking); Williams v. State, 53 So.3d 734, *767 740-41 (Miss.2010) (murder conviction reversed and remanded because evidence supported instructing the jury on a lesser nonincluded offense of assisted suicide);
Brooks v. State, 18 So.3d 833, 839-41 (Miss.2009) (defendant, indicted for aggravated assault, entitled to lesser-offense instruction on reckless driving); Delashmit v. State, 991 So.2d 1215, 1221-22 (Miss.2008) (lesser-offense instruction on misdemeanor indecent exposure not proper where evidence supported only felony enticement of a child for sexual purpose, for which defendant was convicted); Brazzle v. State, 13 So.3d 810, 815-16 (Miss.2009) (lesser-offense instruction not supported by the evidence); Green v. State, 884 So.2d 733, 737 (Miss.2004) (conviction reversed and remanded where evidence supported giving of lesser-offense instruction); Moore, 799 So.2d at 91; Richardson v. State, 767 So.2d 195, 200-01 (Miss.2000) (conviction of statutory rape reversed and remanded where lesser related offense on lustful touching supported by evidence); Mangum v. State, 762 So.2d 337, 343 (Miss.2000) (lesser-offense instruction not supported by the evidence); Chase v. State, 645 So.2d 829, 851 (Miss.1994) (no evidentiary basis for accessory-after-the-fact instruction); Jefferson v. State, 556 So.2d 1016, 1020 (Miss.1989) (by requesting a lesser-offense instruction, accused waives right to indictment as to lesser offense); McGowan, 541 So.2d at 1029; Gangl v. State, 539 So.2d 132, 136-37 (Miss.1989) (by requesting a lesser-offense instruction, accused waives right to indictment as to lesser offense; conviction of armed robbery reversed and remanded where lesser offense of accessory after the fact supported by the evidence); Mease v. State, 539 So.2d 1324, 1329 (Miss.1989) (accused “is of right entitled to have the jury instructed regarding any offense carrying a lesser punishment arising out of a common nucleus of operative fact with the scenario giving rise to the charge laid in the indictment.”).
¶ 50. The unanimous Court[8] in Griffin was acting pursuant to its inherent rule-making authority under Newell v. State, 308 So.2d 71 (Miss.1975). Newell provided that
[Legislative suggestions concerning procedural rules ... will be followed unless determined to be an impediment to justice or an impingement upon the constitution. The inherent power of this Court to promulgate procedural rules emanates from the fundamental constitutional concept of separation of powers and the vesting of judicial powers in the courts.
Id. at 76 (citing Matthews v. State, 288 So.2d 714 (Miss.1974); Gulf Coast Drilling & Exploration Co. v. Permenter, 214 So.2d 601 (Miss.1968); Southern Pac. Lumber Co. v. Reynolds, 206 So.2d 334 (Miss.1968)). The judicial instruction of jurors respecting the law to be applied by them is a procedural process. This Court was well within its judicial prerogatives in Griffin to require the giving of jury instructions on lesser-related offenses, when warranted by the evidence. That principle can be applied today in the context of the lesser-related offense of accessory after the fact. The accessory-after-the-fact statute legislatively established a lesser crime that, by definition, was, in every case in which it applied, both “lesser” than and “related” to some greater offense that either had been committed or attempted by someone else. There can be no doubt that this Court possessed full authority under Newell to craft, as it did in Griffin, a precedential rule that, when warranted by the evidence, *768 a defendant is entitled to have the jury-instructed on the lesser-related offense.
¶ 51. Here, Hye contends that the jury had before it evidence which could have led to his being found guilty of the lesser-related offense of accessory after the fact. Without doubt, this was a lesser offense than that pled in the indictment. Since the evidence to which Hye pointed, if believed beyond a reasonable doubt by the jurors, would have resulted in his being convicted of helping, or trying to help, another indictee in the capital-murder case after the commission of that crime, clearly it would have been related to the principal charge — thus, a lesser-related offense. This was Hye’s theory of his case; indeed, it was his defense. But, in the absence of an appropriate jury instruction, the jurors were powerless to address it. Hye’s theory was a legitimate one, well grounded in Mississippi law. But, contrary to our clear and powerful precedent, it was not brought to the jury’s attention by the trial court via appropriate instruction. Instead, the jury was given but two options in the guilt phase of the trial: finding Hye guilty of capital murder, or finding him not guilty.
1152. Despite this Court’s protracted adherence to Griffin, the majority expresses agreement with those members of the Court of Appeals who advocate for the rule’s demise. But neither the majority nor those learned judges persuasively explain why the decision in that case ought to be abandoned in order “to avoid the perpetuation of pernicious error.” Stone, 43 So.2d 184, 190 (Miss.1949). With respect to the majority and to those members of our Court of Appeals whose view they share, the simple circumstance that some other jurisdictions have discarded the rule, and Mississippi happens to be in the minority of jurisdictions which have retained it, is not a sufficient reason to overcome the doctrine of stare decisis, especially with respect to a longstanding procedure which serves good purposes and is not in any state of disrepair. See Gebben, 108 So.3d at 969-70; Sheffield v. State, 64 So.3d 529, 532-33 (Miss.Ct.App.2011). A footnote from Gebben tracks criticism from the Court of Appeals:
See Barber v. State, 743 So.2d 1054, 1059 (¶ 19) (Miss.Ct.App.1999) (Southwick, P.J., dissenting) (“An accused should not have the unrestricted right to search the statute books for some other related but not lesser-included offense with a lesser punishment, and insist upon an instruction on that crime.”); see also Williams v. State, 53 So.3d 761, 792 (Miss.Ct.App.2009) (Roberts, J., dissenting) (“[I]n the context of a prosecution of a felony, the entitlement to a lesser non-included offense instruction is contrary to Article 3, Section 27 of the Mississippi Constitution of 1890,” which requires indictment by a grand jury absent a sworn waiver.[9]), rev’d, 53 So.3d 734 (Miss.2010); Brooks v. State, 18 So.3d 859, 876 (Miss.Ct.App.2008) (Carlton, J., dissenting) (“The current case exemplifies what the United States Supreme Court projected as unworkable jurisprudence lacking constitutional and statutory legs.”), rev’d in part, 18 So.3d 833 (Miss.2009); McDonald v. State, 784 So.2d 261, 266 (Miss.Ct.App.2001) (Southwick, J., concurring) (“In effect an accused can indict himself for an offense that is not within the actual indictment but is potentially *769 ■within the facts and carries a lesser sentence.”).
Id. at 971 n. 6.
¶ 53. Judge Southwick, then a member of the Mississippi Court of Appeals, expressed the concern that “[a] jury should not be asked to determine the guilt of a person on an offense for which he was not even tried.” McDonald, 784 So.2d at 270 (Southwick, J., dissenting). The defendant had been indicted for simple assault on a police officer but had requested and been denied an instruction on the lesser-related offense of resisting arrest. McDonald, 784 So.2d at 264. The majority reversed McDonald’s conviction and remanded, finding that he had a right to have the jury instructed on simple assault, which the majority found to have an evidentiary foundation. Id. Judge Southwick disagreed: “The underlying factual issue of arrest was simply not explored or even mentioned at trial.... Yet there was some evidence here.” McDonald, 784 So.2d at 270 (Southwick, J., dissenting) (emphasis in original). According to Judge Southwick, “if the elements on the lesser offense are all in the greater offense, then what is in the lesser offense instruction will necessarily have been examined fully in the trial.” Id. However, “the lesser non-included charge was based on factual issues that were not meaningfully developed ....” Id. Ultimately, Judge Southwick found that “[t]he evidence here of an effort to arrest was incidental at best, though it did exist.” Id.
¶ 54. Any concern regarding factual development of a requested lesser-related instruction is ameliorated by the predicate which must be laid in order to support granting of the instruction: such an instruction will be given only where “a lesser offense, as opposed to a lesser-included offense, arises from the same operative facts and has an evidentiary basis.” Williams, 53 So.3d at 740-41 (quoting Moore, 799 So.2d at 91) (citing Griffin, 533 So.2d at 447-48) (emphasis added). Additionally, the evidentiary standard for a lesser-included offense and a lesser-related offense is the same, and a lesser-related instruction should be granted unless “the trial judge — and ultimately this Court— can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense.” Richardson, 767 So.2d at 200 (quoting Harper v. State, 478 So.2d 1017, 1021 (Miss.1985)).
¶ 55. Moreover, the Griffin rule came into being to address the following problem, as articulated by this Court: “[t]he prosecution charges the accused with a serious felony, only to have the defense offer a version of the facts rendering the accused far less culpable and, most important, subject to a far lesser punishment.” Griffin, 533 So.2d at 445 (emphasis added). The Court continued: “[Iff the evidence be such that a reasonable jury might have found the facts as the defense suggests them to have been, the accused of right is entitled to have the jury consider that option and be instructed to that effect.” Id. (emphasis added). To entitle the accused to a lesser-offense instruction, Griffin requires, as it always has required, that an evidentiary predicate be laid. The burden is on the defense meaningfully to develop the facts in a way that is supportive of a requested instruction. As such, this Court’s long adherence to the rule articulated in Griffin cannot be said to be “mischievous,” nor does it constitute “pernicious error.” Our trial courts, the Court of Appeals, and this Court are well-equipped to decide whether a lesser-offense instruction is warranted.
*770 ¶56. The majority further opines that Griffin “instituted the rule without much discussion and cited no .authority for its support.” Maj. Op. ¶ 16. Thus, the majority conjectures that “Griffin was likely persuaded, if not influenced, by a federal Court of Appeals decision, United States v. Whitaker, 447 F.2d 314 (D.C.Cir.1971), and a California Supreme Court decision, People v. Geiger, 35 Cal.3d 510, 199 Cal.Rptr. 45, 674 P.2d 1303 (1984).” Maj. Op. ¶ 16. In interpreting Federal Rule of Criminal Procedure 31(c),[10] the United States Court of Appeals for the District of Columbia Circuit adopted what is known as the “inherent relationship test” in United States v. Whitaker:
A more natural, realistic and sound interpretation of the scope of “lesser included offense,” in line with our own views on the subject, is that defendant is entitled to invoke Rule 31(c) when a lesser offense is established by the evidence adduced at trial in proof of the greater offense, with the caveat that there must also be an “inherent” relationship between the greater and lesser offenses, i.e., they must relate to the protection of the same interests, and must be so related that in the general nature of these crimes, though not necessarily invariably, proof of the lesser offense is necessarily presented as part of the showing of the commission of the greater offense.
Whitaker, 447 F.2d at 319. Geiger, premised on the rationale of the Whitaker court, stands for the proposition that, where the defendant had been indicted for burglary, the denial of a request by the defendant to have the jury instructed on the “related, but not necessarily included offense” of-vandalism constituted reversible error:
The offense of vandalism is related to burglary since it is made an offense to protect the same societal interest — security of property — as burglary. It is often proven by the evidence that is offered to prove burglary. The defense evidence and theory here were consistent with the commission of vandalism and with an acquittal of burglary. The testimony of the owner of the Dragon Moon Disco, and the evidence that nothing in Jack’s was taken or disturbed, both of which were admitted for the purpose of establishing defendant’s guilt or innocence of the charged offense were sufficient to create a genuine conflict as to defendant’s intent when he, concededly, broke the window.
Geiger, 35 Cal.3d at 521, 532, 199 Cal.Rptr. 45, 674 P.2d 1303. The majority may be correct that these opinions influenced this Court’s decision in Griffin. But, while the foundation and ancestry of Griffin are of interest academically, a professorial analysis of each and every precedential influence upon the Griffin Court back in 1988 is unnecessary to an appreciation of the important utility and inherent fairness of the rule thus promulgated, whose judicious use by Mississippi trial and appellate courts has withstood a very lengthy test of time.
¶ 57. As the majority notes, California has retreated from its decision in Geiger. People v. Birks, 19 Cal.4th 108, 112-13, 77 Cal.Rptr.2d 848, 960 P.2d 1073 (1998). Because “Geiger’s rationale has since been expressly repudiated for federal purposes by the United States Supreme Court, and it continues to find little support-in other *771 jurisdictions,” the California Supreme Court held that “Geiger represents an unwarranted extension of the right to instructions on lesser offenses.” Id. But, while California may have retreated from its previous position with regard to the entitlement of defendants to instructions on lesser-related offenses, the majority again fails to answer the ultimate question before it: whether the rule articulated by the Mississippi Supreme Court in Griffin is “pernicious” or “mischievous” to such a degree that this Court now should disregard stare decisis in order to overrule it. I am unwilling to agree with the rationale that, because California did away with its rule, so should Mississippi.
¶ 58. The majority further notes that, “soon after Griffin [and since Geiger ] was decided, ‘all arguable federal support for its conclusions has been withdrawn.’ ” Maj. Op. ¶ 21 (citing Birks, 19 Cal.4th at 123, 77 Cal.Rptr.2d 848, 960 P.2d 1073). The majority continues: “As Birks observed, the rationale of the Geiger decision has since been unequivocally repudiated by the United States Supreme Court in Schmuck v. United States, 489 U.S. 705, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989) and Hopkins v. Reeves, 524 U.S. 88, 118 S.Ct. 1895, 141 L.Ed.2d 76 (1998).” Our Court of Appeals has noted that “the Federal Rules of Criminal Procedure limit the defendant’s entitlement to instructions on only those lesser offenses ‘necessarily included’ in the offense charged.” Gebben, 108 So.3d at 969 (citing Fed.R.Crim.P. 31(c); Schmuck, 489 U.S. at 716, 109 S.Ct. 1443). “And the United States Supreme Court has rejected the notion that defendants are entitled to lesser non-included instructions under the U.S. Constitution.” Gebben, 108 So.3d at 969 (citing Hopkins, 524 U.S. at 96-97, 118 S.Ct. 1895); see Sheffield v. State, 64 So.3d at 532 (citing Hopkins, 524 U.S. at 97, 118 S.Ct. 1895). But the United States Supreme Court’s analysis remains unpersuasive, and in these circumstances is not binding upon us, regarding why Mississippi’s law should change. As with the majority’s discussion of Birks, it certainly fails to analyze the alleged “pernicious” nature of lesser-related-offense instructions under Mississippi law.
¶ 59. In Schmuck, the defendant was indicted for and convicted of mail fraud. Schmuck, 489 U.S. at 707, 109 S.Ct. 1443. He moved under Federal Rule of Civil Procedure 31(c) to have the jury instructed on the lesser-related misdemeanor of odometer tampering, and the district court denied the motion. Id. at 708, 109 S.Ct. 1443. A divided panel of the United States Court of Appeals for the Seventh Circuit reversed and remanded the case for a new trial, holding that the jury should have been instructed on odometer tampering based on the “inherent relationship test.” Id. (citing Whitaker, 447 F.2d at 319). The en banc Seventh Circuit vacated the panel opinion and reversed, holding that the district court was not required by Rule 31(c) to instruct the jury on odometer tampering. Schmuck, 489 U.S. at 709-10, 109 S.Ct. 1443. The Supreme Court agreed: “[wjhere the lesser offense requires an element not required for the greater offense, no instruction is to be given under Rule 31(c).” Id. at 716, 109 S.Ct. 1443.
¶ 60. But a federal interpretation of a federal rule of criminal procedure, while interesting, is of no moment to this Court’s analysis of controlling Mississippi precedent or court rules, and certainly does not provide support for the argument that the Griffin rule is “pernicious” and should be struck down. In fact, Mississippi’s Uniform Rules of Circuit and County Court Practice provide, in pertinent part, that “[i]n criminal cases if different counts are charged in the indictment or if the court instructs the jury as to related or lesser *772 offenses, the jurors shall, if they convict the defendant, make it appear by their verdict- on which counts or of which offenses they find the defendant guilty.” URCCC 3.10 (emphasis added).The rules of procedure adopted by this Court for use in the trial courts of this State contemplate the giving of lesser-related-offense jury instructions, unlike Federal Rule of Criminal Procedure 31(c), which allows only for lesser included offenses. It is elementary that Mississippi is free to promulgate and adhere to its own common law and rules of court, to the extent that they are not repugnant to the United States Constitution. See Downey v. State, 144 So.3d 146, 151 (Miss.2014) (“We are empowered by our state constitution to exceed federal minimum standards of constitutionality and more strictly enforce [constitutional rights].”) (citing Miss. Const. art. 3, § 26; Smith v. State, 500 So.2d 973, 979 (Miss.1986)); see also Whitaker v. State, 146 So.3d 333, 342 (Miss.2014) (Kitchens, J., dissenting).
¶ 61. Likewise, in Hopkins v. Reeves, Nebraska indicted Reeves for two counts of felony murder. Hopkins, 524 U.S. at 91, 118 S.Ct. 1895. At trial, Reeves requested that the jury be instructed on second-degree murder and manslaughter. Id. at 92, 118 S.Ct. 1895. According to the United States Supreme Court, “[t]he trial court refused on the ground that the Nebraska Supreme Court consistently has held that second-degree murder and manslaughter are not lesser included offenses of [felony murder].” Id. Following conviction, sentence, and unsuccessful pursuit of relief in Nebraska state courts, Reeves sought a writ of habeas corpus in federal district court, arguing that the trial court’s failure to give his requested instructions was unconstitutional pursuant to Beck v. Alabama, 447 U.S. 625, 100 S.Ct. 2382, 65 L.Ed.2d 392 (1980), in which the Supreme Court held “unconstitutional a state statute that prohibited lesser included offense instructions in capital cases, when lesser included offenses to the charged crime existed under state law and such instructions were generally given in noncapital cases.” Hopkins, 524 U.S. at 90, 118 S.Ct. 1895.
¶ 62. The district court rejected Reeves’s claim, but the United States Court of Appeals for the Eighth Circuit reversed, reasoning that “the constitutional error was the same as that in Beck,” because Reeves “could have been convicted and sentenced for either second degree murder or manslaughter .... ” Hopkins, 524 U.S. at 93, 118 S.Ct. 1895 (quoting Reeves v. Hopkins, 102 F.3d 977, 983-84 (8th Cir.1996) (“The unacceptable constitutional dilemma [in Beck, as in Hopkins ] was that state law prohibited instructions on noncapital murder charges in cases where conviction made the defendant death-eligible.”)).
¶63. The Supreme Court considered “whether Beck requires state trial courts to instruct juries on offenses that are not lesser included offenses of the charged crime under state law.” Id. at 90, 118 S.Ct. 1895.The Court held that because, “as a matter of law, Nebraska prosecutors cannot obtain convictions for second-degree murder or manslaughter in a felony-murder trial,” the Nebraska trial court “merely declined to give instructions on crimes that are not lesser included, offenses.” Id. at 96, 118 S.Ct. 1895. (emphasis in original). In contrast to Beck, where the constitutionally offensive statute “prohibited instructions on offenses that state law clearly recognized as lesser included offenses of the charged crime” in capital cases, the Nebraska court “did not deny respondent instructions on any existing lesser included offense of felony murder.” Id. (emphasis added). Ultimately, the Court found the rule articulated by the Eighth Circuit too restrictive:
*773 The Court of Appeals apparently would recognize a constitutional right to an instruction on any offense that bears a resemblance to the charged crime and is supported by the evidence. Such an affirmative obligation is unquestionably a greater limitation on a State’s prerogative to structure its criminal law than is Beck’s rule that a State may not erect a capital-specific, artificial barrier to the provision of instructions on offenses that actually are lesser included offenses under state law.
Id. at 97-98, 118 S.Ct. 1895 (emphasis added).
¶ 64. The Court declined to extend Beck to require state courts to provide lesser-related-offense instructions where state law prohibited or did not recognize them. The Court, then, was not referring to the “practice of allowing lesser non-included-offense instructions” when it opined that lesser-related-offense instructions would be “not only unprecedented, but also unworkable.” Maj. Op. ¶ 23 (citing Hopkins, 524 U.S. at 97, 118 S.Ct. 1895) (emphasis added). The Court simply held that the federal Constitution does not require “that States create lesser included offenses to all capital crimes,” nor does it require “that an instruction be given on some other offense — what could be called a ‘lesser related offense’ — when no lesser included offense exists.” Hopkins, 524 U.S. at 97, 118 S.Ct. 1895. Again, the Griffin rule is unaffected. The Hopkins case does not address the question before this Court now: whether entitling an accused to an instruction on a lesser-related offense where an evidentiary basis for it exists is “mischievous” in effect or “pernicious” such that stare decisis may be disregarded. Hopkins simply did not address that question. Its holding did no damage to Griffin.
¶ 65. The majority next turns to policy arguments in an attempt to support its repudiation of the longstanding Griffin rule. According to the majority, “[b]y allowing a criminal defendant ‘to seek and obtain conviction for a lesser [nonincluded] offense whose elements the state has neither pled nor sought to prove’ gives the defendant a ‘superior trial right.’” Maj. Op. ¶ 19 (quoting Birks, 77 Cal.Rptr.2d 848, 960 P.2d at 1081). Additionally, the Uniform Criminal Rules Study Committee has proposed Rule 23.2(d)[11] to this Court, the suggested comment to which reads as follows, in pertinent part:
Specifically, a jury may no longer be instructed on a so-called “lesser related” or “lessfer] non-included” offense (a lesser offense which does not meet the criteria for a lesser included offense instruction) .... The approach of section (d) avoids the difficulties inherent when a defendant seeks to place an uncharged, non-included offense before the jury, thereby diminishing the prosecuting attorney’s traditional and exclusive discretion over charging decisions. Section (d) also restores symmetry, as both the prosecution and the defense may seek an instruction on a lesser included offense, while the Constitution forbids a prosecuting attorney from receiving an instruction on a lesser offense whose elements are not included in the indictment.
Matthew Steffey, Mississippi Criminal Procedure: Proposed Rules and Com *774 merits, 31 Miss. C.L.Rev. (Special Issue) 1, 156 (2018) (citing Schmuck, 489 U.S. at 718, 109 S.Ct. 1443).[12]
¶ 66. But the Griffin Court addressed the concern over uncharged offenses being placed before the jury and the purported diminution of prosecutorial discretion, for it places upon the defense the burden to adduce evidence at trial, “such that a reasonable jury might have found the facts as the defense suggests them to have been.” Griffin, 533 So.2d at 445. The jury, of course, is to consider the evidence as a whole, which may mean that the jurors find, on the basis of some of the prosecution’s proof, when considered in conjunction with some, or perhaps all, of the defendant’s proof, that the lesser-related offense has been proven beyond a reasonable doubt, but not the crime charged in the indictment. See Warner v. State, 222 Miss. 322, 328, 75 So.2d 741, 744 (1954) (“It is the duty of the jury to consider the evidence as a whole and determine from that the guilt or innocence of an accused.”).
¶ 67. The majority echoes the concerns of the Criminal Rules Study Committee: “[Particularly when the State does not consent, the giving of lesser-nonincluded-offense instructions invites the jury to convict the defendant of a crime that no party may have attempted to establish beyond a reasonable doubt.” Maj. Op. ¶ 27. But as mentioned above, the defendant, by requesting the lesser-related-offense instruction, waives the right to indictment on the offense for which he or she seeks the instruction. Hall, 127 So.3d at 205 (“defendant’s request of a lesser-offense instruction operates as a waiver of indictment. ...”); Griffin, 533 So.2d at 448 n. 2; Jefferson, 556 So.2d at 1020; Gangl, 539 So.2d at 136-37.
¶ 68. Additionally, the Criminal Rules Study Committee and the majority imply that the Griffin rule promotes asymmetry, because “only the criminal defendant may request a lesser non-included offense instruction, as constitutional notice considerations forbid the prosecution from receiving an instruction on a lesser offense whose elements are not included in the indictment.” Maj. Op. ¶20. It is true that “only the defendant, and not the State, may request a lesser[-related]-offense instruction.” Hall, 127 So.3d at 205 (citing Griffin, 533 So.2d at 448 n. 2). Griffin appeared in the common law of this State to bring symmetry to one aspect of our criminal jurisprudence: “the prosecution charges the accused with a serious felony, only to have the defense offer a version of the facts rendering the accused far less culpable and, most important, subject to a far lesser punishment,” leaving the jury faced with the choice of conviction or acquittal despite evidence supporting a lesser offense. Griffin, 533 So.2d at 445. The concerns of the majority and others regarding the Griffin rule simply do not rise to the level of “perniciousness” or “mischievousness” necessary to overcome stare decisis.
¶ 69. Furthermore, symmetry in a criminal case never before has concerned this Court, as can be observed in the context of a lesser-included offense instruction: “in a murder case our law allows the prosecution to obtain a manslaughter instruction, almost willynilly, but [ ... ] the defendant is not always so entitled.” Jackson v. State, 551 So.2d 132, 146 (Miss.1989) (citing Reed v. State, 526 So.2d 538, 540 (Miss.1988); Fairchild v. State, 459 *775 So.2d 793, 800-02 (Miss.1984)). This having been an argument of the defendant, the Court pointed out that “[cjandor requires concession that Jackson has accurately described the current state of our law.” Jackson, 551 So.2d at 146 (citing Mease, 539 So.2d at 1338 (Hawkins, P.J., specially concurring)). But, despite the lack of “symmetry” between the prosecution and the defense, this Court reaffirmed the principle that, “where there is in the record evidence legally sufficient to support a jury finding of guilty of murder, ... the defendant will not be heard to complain that a manslaughter instruction was given,” despite the fact that “the manslaughter instruction was not warranted under the evidence.” Jackson, 551 So.2d at 146 (citations omitted) (emphasis added). Thus it seems the defendant is es-topped from complaining that a lesser-m-cluded- offense instruction was given, though the instruction was not supported by the evidence. I decline to countenance the State’s fairness argument, considering that a lesser-reZaied-offense instruction requires evidentiary support for its presentation to the jury.
¶ 70. Interestingly, today’s reversal of Griffin will have a restrictive effect on the State’s ability to engage in plea bargaining. Long before Griffin, this Court held that the trial court was without jurisdiction to accept the defendant’s guilty plea to accessory after the fact, since accessory after the fact is not a lesser-ineluded offense of attempted armed robbery. Box v. State, 241 So.2d 158, 159 (Miss.1970). In the wake of Griffin, this Court overruled Box, holding that “[a] subsequent event such as a guilty plea to a lesser related offense in no way ousts the court of personal jurisdiction” to accept a guilty plea on a lesser-related offense. Jefferson, 556 So.2d at 1021. By entering a plea of guilty to a lesser-related offense, the Court opined, a defendant waives his right to be indicted. Id. Thus, under Jefferson, the State could reach a plea agreement with a criminal defendant on a lesser-related offense, such as accessory after the fact. After today’s decision, the State is bound, as it was under Box, to offer only pleas of guilty to lesser-included offenses.
¶71. Because I would not overrule Griffin and its progeny and because I find that lesser-related-offense instructions which are supported by the evidence ought to remain a viable component of Mississippi criminal law and practice, I dissent.
II. Terry Hye presented sufficient evidence to support an accessory-after-the-fact instruction.
¶ 72. I turn now to analyze whether Hye was entitled to an accessory-after-the-fact instruction. We review a grant or denial of a jury instruction under an abuse-of-discretion standard, considering the jury instructions “as a whole ‘to determine if the jury was properly instructed.’ ” Clayton v. State, 106 So.3d 802, 804 (Miss.2012) (quoting Flowers v. State, 51 So.3d 911, 912 (Miss.2010)). “On appellate review of the trial court’s grant or denial of a proposed jury instruction, our primary concern is that ‘the jury was fairly instructed and that each party’s proof-grounded theory of the case was placed before it.’ ” Banyard v. State, 47 So.3d 676, 681 (Miss.2010) (quoting Young v. Guild, 7 So.3d 251, 259 (Miss.2009)).
¶ 73. A criminal defendant “is entitled to have jury instructions given which present his theory of the case.” Clayton, 106 So.3d at 804 (quoting Bailey v. State, 78 So.3d 308, 315 (Miss.2012)). Such entitlement, however, is not unlimited. Id. The trial court may refuse a proffered jury instruction if: (1) the instruction “incorrectly states the law,” (2) the instruction “is covered fairly elsewhere in the instruc *776 tions,” or (3) the instruction “is without foundation in the evidence.” Id.
¶ 74. The trial court refused the following jury instructions requested by Hye:
Instruction D-26: The Court instructs the Jury that if you are unable to find the Defendant, Terry Hye, Jr., guilty of the felony crime of capital murder then you should continue your deliberations to consider the elements of the felony crime of Accessory After the Fact to Murder.
Instruction D-28: To find Terry Hye, Jr. guilty of Accessory After the Fact, you must find to [sic] following:
(1) a completed felony has been committed;
(2) Terry Hye concealed, received, relieved, aided, or assisted a felon, knowing that such person had committed a felony; and
(3) such assistance or aid was rendered with the intent to enable such felon to escape or avoid arrest, trial, conviction, or punishment after the commission of the felony.
Mississippi Code Section 97-1-5(1) sets forth the elements of the crime of accessory after the fact:
Every person who shall be convicted of having concealed, received, or relieved any felon, or having aided or assisted any felon, knowing that the person had committed a felony, with intent to enable the felon to escape or to avoid arrest, trial, conviction or punishment after the commission of the felony, on conviction thereof shall be imprisoned in the custody of the Department of Corrections
[[Image here]]
Miss.Code Ann. § 97-1-5(1) (Rev.2014). Because the requested jury instruction on the elements of the crime of accessory after the fact tracks the language of the statute, it cannot be said that the proposed jury instruction “incorrectly states the law.” The State does not dispute this and does not contend that the proposed jury instructions are “fairly covered elsewhere in the instructions.” The State vehemently objected to the proposed jury instructions, and the trial court agreed by refusing to give them. Thus, the dispute hinges on the existence of a sufficient evidentiary foundation to support the giving of Hye’s proposed accessory-after-the-fact jury instructions.
¶ 75. This Court consistently has articulated a low threshold with regard to what a defendant must show in the record to support a tendered “theory-of-the-case” instruction. “A defendant is entitled to have instructions on his theory of the case presented, even though the evidence that supports it is weak, inconsistent, or of doubtful credibility.” Banyard v. State, 47 So.3d 676, 681 (Miss.2010) (quoting Ellis v. State, 778 So.2d 114, 118 (Miss.2000)). “There needs [sic] not be even a plausible explanation” for the defendant’s theory. Banyard v. State, 47 So.3d at 681 (quoting Walker v. State, 913 So.2d 198, 235 (Miss.2005)). Further, “[a] criminal defendant is entitled to have his jury instructed on all offenses of which an evidentiary basis exists in the record, even where the evidence ... arises only in the defendant’s own testimony.”[13] Banyard v. State, 47 So.3d at 681 (quoting West v. State, 725 So.2d 872, 888 (Miss.1998), overruled on other grounds by Jackson v. State, 860 So.2d 653 (Miss.2003)) (emphasis added). The standard is similar in homicide cases: “the trial court should instruct the jury about a defendant’s theories of defense, justification, or excuses that are supported by the *777 evidence, no matter how meager or unlikely, and the trial court’s failure to do so is error requiring reversal of a judgment of conviction.” Clayton, 106 So.3d at 806 (quoting Brown v. State, 39 So.3d 890, 899 (Miss.2010)) (emphasis added).
¶ 76. Where one defendant, tried for the murder of his wife, testified that he and his wife were involved at the time in an escalating argument in which his wife threatened him and cut him with a knife at the time of the killing, this Court unanimously reversed and remanded for a new trial because the trial court failed to instruct the jury on the defendant’s alternative heat-of-passion manslaughter theory. Clayton, 106 So.3d at 806. Likewise, in Banyard, 47 So.3d at 679, codefendant Ragsdale encouraged Banyard to assist Ragsdale in robbing a pizza delivery person. Id. at 680. Banyard testified that Ragsdale told him the gun was unloaded; but Banyard feared that Ragsdale would load the weapon and shoot him if he refused to comply. Id. As Banyard handed the gun to Ragsdale, it discharged. Id. This Court reversed Banyard’s conviction of capital murder and remanded because the trial court had refused to instruct the jury on duress, a defense theory that Ban-yard had maintained throughout trial. Id. at 683. In Brown, 39 So.3d at 900, this Court reversed the trial court for failing to give Brown’s requested accidental-shooting instruction where an alternative theory of his defense was that he accidentally shot the victim “in the heat of passion.” We urged “our trial judges to remember that if ‘serious doubt exists as to whether an instruction should be included, the doubt should be resolved in favor of the accused.’” Id. (quoting Davis v. State, 18 So.3d 842, 849 (Miss.2009)).
¶77. In another instance, this Court reversed a defendant’s conviction of armed robbery and remanded because the trial judge failed to give the jury a requested accessory-after-the-fact instruction. Gangl v. State, 539 So.2d 132, 137 (Miss.1989).[14] There, the State presented evidence “that the primary participants had a pre-arranged plan[15] with Gangl for him to be the driver of a getaway vehicle.” But had an accessory-after-the-fact instruction been granted, “a serious doubt may have arisen in the minds of the jurors as to whether Gangl’s apparent assistance to at least one of the perpetrators was the product of pre-design, or was simply the product of after the fact circumstance.” Id. at 136.
¶ 78. In the present case, Hye asserted that evidence adduced at trial supported his proposed accessory-after-the-fact jury instructions. Hye cited Alonzo Kelly’s testimony to show that Hye had colluded with Kelly, Benjamin, and Wells to concoct an exculpatory version of events. According to Hye, this is supported by the State’s description .in closing argument of the Thursday (when the shooting occurred) to Monday (when the police interviews took place) as “a weekend alibi fest.” Further, *778 Hye contended at trial that he had lied to police and had covered for other members of the group, which, as he contended in his petition for writ of certiorari, “could have led the jury to believe that Terry was an accessory after the fact.” Hye testified that he and Benjamin had caught a ride from Moss Point to Pascagoula, where they had stayed in Hye’s aunt’s house— “[t]hus, there was evidence' to support that Terry provided assistance to Tevin by providing shelter to him at a relative’s house following the shooting.” In response, the State posited that “all evidence placed Kelly away from the Conoco and not a principal in the crime. The evidence showed that Hye acted as a principal.” The Court of Appeals agreed with the State, finding both that Hye’s “involvement in the robbery began earlier in the day when the group decided to go ‘hit a lick’ and headed to the gas station” and that Hye “never presented this theory of defense to the jury.” Hye, 2013 WL 2303518, at *7, 162 So.3d at 823. With respect, we disagree.
¶ 79.' Not only was evidence adduced at trial that the group, following the shooting, frantically attempted to concoct alibis, that Hye initially lied to police, and that Hye provided shelter to Benjamin at Hye’s aunt’s house in Pascagoula, but also that both Hye and Kelly testified that the robbery was not the product of planning. Kelly [16] testified “it wasn’t no plan. Nobody was planning to go rob nobody.” Kelly testified further that the reason Hye walked to the Conoco was to purchase cigarettes and that Hye said he “don’t want nothing to do with it.”[17] Hye denied involvement in the robbery and testified that Kelly walked down to the Conoco gas station with Hye, Wells, and Benjamin, instead of remaining at the stop sign down the road as he claimed. Further, Hye testified that, following a failed attempt to get someone to purchase cigarettes for him[18] at the Little Super gas station, Darwin Wells suggested that the group go to the nearby Conoco so that Wells could “hit me a lick” and Hye could “find someone easy to go in the . store there for you to purchase some cigarettes.” Hye testified, “So, I’m like, I ain’t got nothing to do with you hitting no lick, but I need me some cigarettes, so I start walking toward the Conoco.” Hye further testified that, “I never seen a gun until when Darwin Wells slipped and fell and pulled out the gun.” He testified that he did not see a gun during the group’s walk.
¶ 80. It is true that a defendant cannot be both a principal to the crime and an accessory after the fact. Mangum v. State, 762 So.2d at 343 (quoting Hoops v. State, 681 So.2d 521, 534 (Miss.1996)). See also Crosby v. State, 175 So. 180, 181, 179 Miss. 149, 162 (1937) (This Court reversed and remanded Crosby’s accessory-after-the-fact conviction where the lower court “refused to grant the appellant an instruction to the effect that the principal in the commission of a felony cannot thereafter *779 become an accessory after the fact, and, if [the jury] believed from the evidence that the appellant himself murdered Lizzie Marsh, or assisted Williams so to do, he could not be convicted of being an accessory thereto after the fact.”) In its certiora-ri brief to this Court, the State argues that, “there simply was not evidence that Hye acted as an accessory after the fact and not as a principal.” Nevertheless, where the evidence supports the giving of a jury instruction, however weak that evidence may be, it remains the province of the jury, and not the province of this Court, to sort out whether the defendant was a principal to the crime or an accessory after the fact. Banyard, 47 So.3d at 683 (“The jurors are the judges of the credibility of the witnesses, not the appellate courts. We need only decide whether Banyard presented sufficient evidence to meet the minimum threshold necessary to require an instruction on his theory. We find that he did.”).
¶ 81. All the accused must do is “point to evidence in the record from which a jury reasonably could find the defendant not guilty of the crime, with which the defendant is charged and at the same time find the defendant guilty of the ‘lesser offense.’ ” Brazzle, 13 So.3d at 816 (quoting Dampier v. State, 973 So.2d 221, 231 (Miss.2008)). See also Harper v. State, 478 So.2d 1017, 1021 (Miss.1985) (“The only fact issues which should be taken from the jury are those with respect to which the evidence is so clear that rational jurors could not disagree. On all other material issues of fact, the jury must be instructed in the law so that they may then perform their constitutional responsibility.”).
¶ 82. Hye argued in his petition for writ of certiorari that “there was sufficient evidence, certainly more than necessary under the ‘meager, unlikely evidence’ standard in Clayton to support the instruction.” We agree. The standard is not concerned with the quantity or quality of the evidence presented, but rather whether any evidentiary support, however tenuous it may be, exists to support giving the defendant’s requested jury instruction. From the witness stand, Hye denied going to the Conoco station with the intent to participate in a robbery, he denied involvement in the robbery, and he denied knowing that Wells possessed a gun. Hye testified that he simply wanted to have someone buy cigarettes for him. Kelly testified that there was no plan to rob. With regard to presenting an alternative theory of defense at trial, which the Court of Appeals determined that Hye had failed to do, Hye testified that, after the robbery and shooting, he hosted Tevin Benjamin at his aunt’s Pascagoula home. Hye admitted that he initially lied to police, and in so doing he seemed to be trying to assist some of the other suspects. Officer Gray, who interviewed Hye, testified that Hye initially told police that three people remained at the stop sign as the murder transpired. And Kelly testified that the group got together over the weekend to concoct alibis, which the State labeled in its closing argument as a “weekend alibi fest.”
¶ 83. We cannot, therefore, concur with our colleagues in the majority that “there is nothing but inferences upon inferences to support [Hye’s] proposed theory of the case” and that “Hye’s proposed accessory after the fact instruction lacked an eviden-tiary basis.” Maj. Op. ¶ 35. To the contrary, ample evidence adduced at trial supported Hye’s proposed accessory-after-the-fact instruction. This Court repeatedly has held that: “the trial court should instruct the jury about a defendant’s theories of defense, justification, or excuses that are supported by the evidence, no matter how meager or unlikely, and the *780 trial court’s failure to do so is error requiring reversal of a judgment or conviction.” Clayton, 106 So.3d at 806 (quoting Brown, 39 So.3d at 899 (Miss.2010)) (emphasis added). It is not for us to evaluate Hye’s claims for truthfulness, or the lack thereof. Rather, it is our province to determine whether the jury was given proper judicial guidance, in the form of written instructions, to enable it to evaluate Hye’s theory of the case in light of all applicable law.
¶ 84. In the Court of Appeals, the State argued' that “with respect to the granting of lesser offense instructions, an evidentia-ry basis cannot lie in tenuous connections to the evidence which would require the jury to ‘resort[ ] to speculation or conjecture.’ ” Brazzle, 13 So.3d at 818 (quoting Harper, 478 So.2d at 1021). Even though the Court of Appeals did not address this argument by the State, we find Brazzle to be distinguishable from the present case. In Brazzle, the victim of the carjacking alleged to have been committed by Brazzle identified Brazzle as the culprit both from a photo lineup and again at trial. Id. Brazzle also was identified by an officer who had observed him fleeing into the woods prior to being apprehended. Id.
¶85. Here, Linda Porter was shown neither an in-person nor a photo lineup of suspects, and she testified that she recognized them at trial “from the pictures in the newspaper.” Therefore, Brazzle’s assertion on appeal that “the jury ... was free to believe that she was mistaken about her identification and find that Braz-zle had acquired the vehicle from Turner after the fact, as he claimed,” warranted the refusal by the trial court of an accessory-after-the-fact instruction. Id. The jury there reasonably could not find that Braz-zle was a mere accessory after the fact. Here, a reasonable jury, properly instructed, could have ‘ come to the conclusion,based on the evidence adduced at trial, that Hye was not guilty of capital murder, but was guilty as an accessory after the fact to capital murder. As in Gangl, “a serious doubt may have arisen in the minds of the jurors as to whether” Hye was a principal in the robbery underlying the murder of Michael Porter, or whether his participation in the crime was limited to his having given after-the-fact assistance to the perpetrators of this dastardly and senseless crime. See Gangl, 539 So.2d at 136.
¶ 86. I would hold that Hye presented a sufficient evidentiary foundation to support the giving of an accessory-after-the-fact instruction, since a reasonable jury could have come to the conclusion that he was guilty of the crime of accessory after the fact. Because the jury was not instructed on Hye’s accessory-after-the-fact theory, I would reverse the judgment and remand the case to the Circuit Court of Jackson County for a new trial.
DICKINSON, P.J., AND KING, J., JOIN THIS OPINION. CHANDLER, J., JOINS THIS OPINION IN PART.

. "Pernicious” is defined as "having a harmful effect, especially in a gradual or subtle way.” Compact Oxford English Dictionary 842 (2d rev. ed.2003). It is derived from the Latin, pemiciosus, meaning "destructive.” Id.

. "Mischievous” is defined as "(1) causing or disposed to mischief,” or "(2) intended to cause trouble.” Compact Oxford English Dictionary 720 (2d rev. ed.2003).

. Robertson, J., authored the Griffin decision and was joined by Roy Noble Lee, C.3., Hawkins, and Dan M. Lee, PJJ., and Prather, Sullivan, Anderson, Griffin, and Zuccaro, JJ.

. This concern is discussed in a footnote in Griffin: "Any possible concern that simple assault, because technically not a lesser included offense, is not within the indictment for rape dissipates in the face of Griffin's request for the simple assault instruction. Griffin thus waived any inadequacy in the indictment.” Griffin, 533 So.2d at 448, n. 2. See Jefferson, 556 So.2d at 1020; Gangl, 539 So.2d at 136-37.

. Rule 31(c) states that “[a] defendant may be found guilty of any of the following: (1) an offense necessarily included in the offense charged; (2) an attempt to commit the offense charged; or (3) an attempt to commit an offense necessarily included in the offense charged, if the attempt is an offense in its own right.” Fed.R.Crim.P. 31(c).

. Proposed Rule 23.2(d) reads as follows: "The jury may be instructed on any of the following: (1) an offense necessarily included in the offense charged; or (2) an attempt to commit the offense necessarily included therein, if such attempt is an attempt.” Matthew Steffey, Mississippi Criminal Procedure: Proposed Rules and Comments, 31 Miss. C.L.Rev. (Special Issue) 1, 155 (2013).

. Neither this proposed rule nor the accompanying suggestion for a comment has been adopted by this Court.

. It is this low threshold which persuades me that the evidence in the present case supports Hye’s requested accessory-after-the-fact instruction.

. Where the trial judge refused an accessory-after-the-fact instruction "since accessory after the fact is not a lesser included offense of robbery,” this Court held that "[playing obedience to form over substance misses the point.” Gangl, 539 So.2d at 135. The evi-dentiary standard is the same for lesser-offense instructions as it is for lesser-included-offense instructions. Id. at 136-37. We continued, "[t]he facts adduced at trial, and acknowledged by the trial judge, suggest that Gangl may have been guilty of two possible courses of criminal conduct; accessory before the fact to armed robbery, or accessory after the fact to armed robbery.” Id. at 135.

. "Every person who shall be an accessory to any felony, before the fact, shall be deemed and considered a principal, and shall be indicted and punished as such....” Miss.Code Ann. § 97-1-3 (Rev.2014).

.Kelly pled guilty to accessory after the fact. According to Kelly, who was standing at a stop sign down the street, "Terry and Tevin was standing in the road, Darwin went to the parking lot. I heard a gunshot. It happened that quick,” at which point the entire group ran away. The State argues that Kelly’s testimony, plus the testimony of Linda Porter that two black men tussled with her husband just before Wells shot him, proves that Hye was a principal and that Kelly was an accessory after the fact.

. ”[I]t” refers to "hitting a lick," which Kelly testified "mean like going to get, going to money. You fixing to get some money or something.” Hye testified that his understanding of the meaning of "hitting a lick” was "selling dope or weed or something.”

. Hye was sixteen at the time and could not purchase cigarettes for himself, so he would ask adults to go into gas stations to purchase them for him.