ISHEE, J.,
for the Court:-
¶ 1. On March 6, 2002, Renee Kiker was shot after a heated argument with her husband, Julius Kiker. Renee died as a result of the gunshot. Kiker was indicted in the George County Circuit Court for her murder. In his first trial, Kiker was convicted of murdering Renee.. However, the Mississippi’ Supreme Court reversed his conviction and.remanded the case to the trial court.[1] A second trial was held before the same trial judge who presided over the original trial. Before trial, Kiker filed a motion for recusal of the trial judge, which was denied. Kiker was convicted of deliberate-design murder and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC). Kiker now appeals, arguing (1) the Weathersby[2] rule is applicable in this case; therefore, the trial court erred in denying his motion for a directed verdict; and (2) the trial judge erred by denying the motion for recusal. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. On March 6, 2002, Kiker and Renee were engaged in a heated argument. Kiker claimed that during the argument, Renee burned- his clothes and destroyed his belongings. He further claimed that she physically assaulted him. At approximately 5:00 p.m., Kiker called the George County Sheriffs Department because of the argument. Deputy Sheriff Lewis Howell responded to the call. After speaking with the couple, Deputy Howell advised Renee to leave the house. Renee complied, and told Deputy Howell that she had removed all of the weapons from the house. Deputy Howell stated that he left the house at approximately 6:00 p.m.
¶ 3. Renee left the marital home and went to the house of their neighbor, Anthony Buckley. Renee returned to the marital home less than an hour after' she had left. According to Kiker, when Renee returned, he was on the phone with his brother. He stated that Renee then cut the telephone line. They argued for several minutes at which point Kiker went into the backyard of the home. Kiker claimed that Renee followed him into the yard with a loaded handgun and threatened him. He stated that he approached Renee in an attempt to disarm her. However, during the struggle two shots were fired. He claimed that Renee pulled the trigger for both shots. One shot struck Renee and killed her.
¶ 4. Buckley testified that he heard gunshots between 6:30 p.m. and 7:00 p.m. However, the sheriffs department was not called to the house until 9:44 p.m., when Kiker’s mother called 911. Officer Eric Purvis responded to the call. Upon his arrival, he saw Kiker pulling a blanket over something outside of the home. Kiker was holding a weapon in his hand. Officer Purvis demanded that he drop the weapon and then placed Kiker in custody for safety reasons. Officer Purvis then looked under the blanket and discovered Renee’s body. The murder weapon, a .357 *557 Magnum revolver, was also found on top of the blanket. Kiker was then arrested.
¶ 5. At trial, the State presented several lay witnesses. Wade Bowlin, Renee’s son and Kiker’s stepson, testified about the events of March 6, 2002. Bowlin testified that on the day in question, his mother picked him up from school. He noticed that she had placed the four guns from their house in the back of her vehicle. When they arrived home, Renee and Kiker began to argue. During the argument, Bowlin noticed a .357 revolver in Kiker’s front pants pocket. Thereafter, Renee began burning Kiker’s clothing, and Bowlin’s aunt came and picked him up from the house.
¶ 6. Dee Tompkins, a neighbor and Renee’s uncle, saw Kiker on the night in question. Kiker had asked to use his phone to make a long-distance call; however, Tompkins did not have long-distance calling. Tompkins testified that after Kiker mentioned the clothes Renee had burned, Kiker stated: “[S]he will burn for that.” Thereafter, at approximately 6:40 p.m., Kiker proceeded in the direction of his house, and Tomkins left to purchase cigarettes.
¶ 7. The State also presented expert testimony. Dr. Steven Hayne, the chief medical examiner, performed the autopsy on Renee’s body. He testified that the gunshot entrance wound was through Renee’s cheek. The wound was stellate or star shaped, which represents a “hard-contact” wound, indicating the barrel of the gun had hard contact with her cheek upon firing. He further found abrasions on her right arm and thigh that occurred at or near the time of her death. In addition, David Whitehead, an expert with the Mississippi Crime Lab, testified that no gunpowder residue was found on Renee’s hands. Finally, a deposition by Dr. John VanDerwood was read into evidence to impeach Kiker’s testimony. The deposition indicated a prior violent altercation between the parties in which Renee was left with a laceration on her head and bruises on her chest.
¶ 8. On January 18, 2012, a second jury trial began in this case. Before the trial began, Kiker filed a motion for recusal, claiming the trial judge was not impartial since he was the trial judge in the original case. The motion was denied. On January 20, 2012, Kiker was found guilty of deliberate-design murder. He was then sentenced to life in the custody of the MDOC. Kiker then filed a motion for a judgment notwithstanding the verdict (JNOV) or, in the alternative, a motion for a new trial. His motion was denied, and Kiker now appeals.
DISCUSSION
I. Weathersby Rule
¶ 9. In Kiker’s first argument on appeal, he asserts the trial court erred by failing to apply the Weathersby rule and, therefore, by denying his motion for a directed verdict. On appeal, when considering whether the evidence was sufficient in the face of a motion for a directed verdict, “the critical inquiry is whether the evidence shows ‘beyond a reasonable doubt that [the] accused committed the act charged, and that he did so under such circumstances that every element of the offense existed; and where the evidence fails to meet this test it is insufficient to support a conviction.’ ” Bush v. State, 895 So.2d 836, 843 (¶ 16) (Miss.2005) (quoting Carr v. State, 208 So.2d 886, 889 (Miss.1968)). We will find the evidence sufficient, “if a review of the evidence reveals that it is of such quality and weight that, ‘having in mind the beyond a reasonable doubt burden of proof standard," reasonable fair-minded men in the exercise of *558 impartial judgment might reach different conclusions on every element of the offense[.]’ ” Id. (quoting Edwards v. State, 469 So.2d 68, 70 (Miss.1985)).
¶ 10. The Weathersby rule states: It has been for some time the established rule in this state that where the defendant ... [is] the only eyewitness[ ] to the homicide, [his] version, if reasonable, must be accepted as true, unless substantially contradicted in material particulars by a credible witness or witnesses for the state, or by the physical facts[,] or by the facts of common knowledge.
Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933) (citations omitted).
¶ 11. Here, although Kiker was the only eyewitness to the crime, the State’s witnesses contradicted several of his statements. First, Kiker claimed that Renee took all of the guns out of the house earlier in the day. Deputy Howell and Bowlin confirmed that Renee had taken weapons out of the house. However, Bow-lin saw the .357 revolver on Kiker’s person on the afternoon of the incident, after Renee had removed the guns from the house. Therefore, although Kiker claims that Renee had taken all of the weapons, including the murder weapon, testimony established that he was actually in possession of the .357 revolver. As such, his allegation that she had the murder weapon in her possession was contradicted by Bowlin.
¶ 12. Furthermore, there was no gunpowder residue found on Renee’s hands. During Kiker’s testimony he stated:
Q: When the gun fired the first time, it was Renee pulling the trigger, not you?
A. Yes, sir.
Q. And when that gun fired the second time, it was Renee pulling the trigger, not you?
A: Yes, sir.
The fact that no gunpowder residue was found on Renee’s hands discounts Kiker’s claim that Renee actually pulled the trigger of the gun.
¶ 13. Finally, while not in direct contradiction of Kiker’s version of events, several facts place Kiker’s self-defense theory in question. First, Tompkins testified to hearing Kiker say “she will burn for that” in reference to Renee. Next, although Kiker claims he was acting in self-defense, he never called the police. The police were not alerted until Kiker’s mother called 911 nearly three hours after Renee was shot. The jury could certainly have found this inconsistent with the way an individual would act if the shooting was actually in self-defense. Finally, there was a history of violence between Kiker and Renee. We find the application of the Weathersby rule would not have been appropriate in this ease, and the trial court properly denied Kiker’s motion for a directed verdict. This issue is without merit.
II. Motion for Recusal
¶ 14. Kiker argues that the trial judge should have recused himself from the second trial because he presided over the original trial. Canon 3(E)(1) of the Mississippi Code of Judicial Conduct states: “Judges should disqualify themselves in proceedings in which their impartiality might be questioned by a reasonable person knowing all the circumstances.... ” “When a judge is not disqualified under the constitutional or statutory provisions, ‘the propriety of his or her sitting is a question to be decided by the judge, and on review, the standard is manifest abuse of discretion.” Farmer v. State, 770 So.2d 953, 956 (¶ 6) (Miss.2000) (quoting Ruffin v. State, 481 So.2d 312, 317 (Miss.1985)).
¶ 15. The Mississippi Supreme Court has recognized that “it is not unusu *559 al for a judge to sit on successive trials following mistrials or to hear on remand a case where he previously has heard and ruled on the evidence.” Id. at 956-57 (¶ 7) (quoting Garrison v. State, 726 So.2d 1144, 1151 (Miss.1998)). The only evidence of bias cited by Kiker is the trial judge’s failure to apply the Weathersby rule. However, as noted above, the Weathersby rule is not applicable to this case. Accordingly, Kiker has failed to present any evidence of prejudice, bias, or abuse of discretion on the part of the trial judge. This issue is without merit.
¶ 16. THE JUDGMENT OF THE GEORGE COUNTY CIRCUIT COURT OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., IRVING AND GRIFFIS, P.JJ, BARNES, ROBERTS, CARLTON, MAXWELL AND FAIR, JJ., CONCUR. JAMES, J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.

. The first trial resulted in Kiker’s conviction. However, the case was reversed and remanded by the Mississippi Supreme Court based on a conflict of interest between Kiker and his attorney in the original trial. Kiker v. State, 55 So.3d 1060, 1068 (¶ 23) (Miss.2011).

. Weathersby v. State, 165 Miss. 207, 209, 147 So. 481, 482 (1933).