# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2013-KA-01993-COA

QUINCY CLAYTON A/K/A QUINCY LEE CLAYTON        APPELLANT

v.

STATE OF MISSISSIPPI        APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 09/30/2013 |
| TRIAL JUDGE: | HON. BILLY JOE LANDRUM |
| COURT FROM WHICH APPEALED: | JONES COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | OFFICE OF STATE PUBLIC DEFENDER BY: ERIN ELIZABETH PRIDGEN |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ANTHONY J. BUCKLEY |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| TRIAL COURT DISPOSITION: | CONVICTED OF MANSLAUGHTER AND SENTENCED TO TWENTY YEARS, WITH AN ADDITIONAL FIVE-YEAR SENTENCE ENHANCEMENT FOR THE USE OF A FIREARM DURING A FELONY, WITH THE SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND ORDERED TO PAY A FINE OF $5,000 |
| DISPOSITION: | AFFIRMED IN PART; REVERSED AND REMANDED IN PART - 05/19/2015 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE GRIFFIS, P.J., ROBERTS AND FAIR, JJ.**

**ROBERTS, J., FOR THE COURT:**

¶1.     A jury in the Jones County Circuit Court convicted Quincy Clayton of manslaughter for the death of Clayton's wife, Alice Wash Clayton. The circuit court sentenced Clayton to twenty years in the custody of the Mississippi Department of Corrections (MDOC) for the manslaughter conviction and five years for the firearm sentence enhancement pursuant to Mississippi Code Annotated section 97-37-37(1) (Rev. 2014), to run consecutively to his manslaughter sentence.  Clayton's post-trial motions were denied, and he appealed, asking this Court to determine whether the circuit court erred in not applying the *Weathersby*[1] rule and whether the application of the firearm sentence enhancement was proper.  We affirm Clayton's conviction for manslaughter; however, we reverse on the issue of the firearm sentence enhancement and remand for Clayton to be resentenced without the enhancement.

## FACTS AND PROCEDURAL HISTORY

¶2.     Following his first trial, a jury convicted Clayton of murder; however, on December 13, 2012, the Mississippi Supreme Court reversed his murder conviction and remanded the case to the circuit court for a new trial.  *Clayton v. State*, 106 So. 3d 802, 803 (¶1) (Miss. 2012).  The case was reversed due to the circuit court's denial of Clayton's requested jury instruction on an alternative theory of defense.  *Id.* at 804 (¶6).

¶3.     Upon remand, Clayton's second trial was held on September 5-6, 2013.  At trial, Alice's sister, Mary Wash, testified that she was living with Clayton and Alice at the time of the incident on June 21, 2009.  According to Wash, Alice and Clayton had been arguing the night before, and the fighting continued the following morning, when Alice swung a knife

---

[1]*Weathersby v. State*, 165 Miss. 207, 147 So. 481 (1933).

at Clayton a couple of times while they were all in the kitchen. Wash was able to convince Alice to put the knife down. Clayton then began ironing some clothes for church, but Alice pulled them off the ironing board and stomped on them. Alice then went to their bedroom and shut the door. Clayton finished ironing, and he went to the bedroom to retrieve his church shoes. Alice refused to let him in the room to retrieve his shoes. Alice and Clayton continued arguing through the bedroom door. Wash testified that from her seat in the living room, she could see down the hall to where Clayton was standing outside the room. She stated that she did not see him kick open the bedroom door, but when she turned to look down the hall again, she saw him with the shotgun and heard a "boom." Wash stated that when she heard the "boom," she jumped out of her chair and ran down the hall toward Clayton, and they began wrestling over the shotgun. Clayton let go of the shotgun, and, as he was leaving, he said, "that will shut her up," and "I'm through."

¶4. Clayton also testified at trial. Clayton stated that he and Alice had been arguing the night before the incident, and that Alice would not let him sleep in their bedroom. The following morning, the arguing continued, and Alice took his clothes, threw them on the floor, and stomped on them. According to Clayton, he picked up the clothes, and Alice started slapping him and "coming after him." Clayton pushed her into a chair, and Alice then went into the kitchen and returned with a knife.[2] She continued hitting him and threatened to cut him with the knife; Clayton pushed her into the chair again. Alice got up from the chair and swung the knife at Clayton, cutting him on his shoulder. She went to the bedroom,

---

[2] Clayton also explained that Alice had pulled a knife on him approximately six months prior, but her son was able to get it away from her.

3

while Clayton remained in the living room. A few minutes later, Clayton went to the bedroom to get his church shoes, but Alice "came at [him] with that knife stabbing at [him], telling [him] to get out of her damn room." Clayton testified he tried a couple more times to get his shoes, and she kept running him out of the room. He sat down in the hallway outside of the bedroom and said, "you need to stop acting stupid." According to Clayton, Alice came out of the bedroom and started kicking and slapping him, and she "stuck" him in the side with the knife. Alice again went back into the bedroom and locked the door. Clayton again asked to come get his church shoes, and when Alice said he could not, he pushed the door all the way open, and "[t]he frame and everything came off," because Alice had slammed it so hard. Alice again came at Clayton with the knife. Clayton backed out of the room and then got the shotgun he had used the day before to shoot a snake. He then went back to the bedroom to "bluff" his way into getting his shoes. He testified:

> When I walked in my bedroom, inside of my bedroom, when I walked in she come from around that bed with that knife drawn back up at me. I mean, I can see the white in her eyes. I mean, she had a look on her face. I mean, she didn't even look like my wife when I seen her. And she was coming up on me with that knife. . . . I ended up pulling the trigger. . . . And it was an accident what happened because I wasn't trying to shoot her.

¶5. Clayton elaborated that he had never been cut or stabbed in the twenty years they were together. He stated, "I was scared. I was scared because she ain't never did this to me. . . . She came at me – when she came at me[,] she had that knife drawn back." Clayton left the house, flagged down a patrol car, and said, "I'm the one you're looking for, . . . because I just shot my wife." He testified he was taken into custody without incident.

4

¶6. During his testimony, Jones County Deputy Sheriff Brian Buxton confirmed that Clayton flagged him down while both were driving and said: "I'm Quincy Clayton. I'm the man y'all are looking for. I just shot my wife." Deputy Buxton stated that Clayton was not combative at the time he was arrested. Deputy Buxton also took pictures of Clayton's injuries, which were on his shoulder, the side of his chest, and his wrist. These pictures were entered into evidence and published to the jury.

¶7. Betty Wash, Alice's daughter, was unable to be present to testify; however, the State and Clayton stipulated that her testimony would be read to the jury. Betty was not present during the incident, but she arrived shortly thereafter. She removed a knife from Alice's hand and placed it either on top of the dresser or in a dresser drawer.

¶8. After hearing the evidence presented, the jury returned a guilty verdict for manslaughter. Following the verdict, the State sought to enhance Clayton's sentence pursuant to section 97-37-37, which the circuit court permitted. Clayton was sentenced to serve twenty years in the custody of the MDOC for the manslaughter conviction and five years in the custody of the MDOC for the sentence enhancement. Additionally, he was ordered to pay a $5,000 fine. Clayton filed a motion to correct his sentence and a motion for a judgment notwithstanding the verdict or, in the alternative, for a new trial; the circuit court denied these post-trial motions.

¶9. Following the denial of his post-trial motions, Clayton appealed, and he raises two issues:

    I.    The trial court committed reversible error when it failed to apply the *Weathersby* [r]ule and grant [Clayton] a directed verdict of acquittal on

5

manslaughter. Clayton was the only eyewitness to the homicide of Alice Clayton[,] and the evidence established that he injured Alice in necessary self-defense.

II.    Clayton's five-year sentence enhancement under . . . [section 97-37-37] is unconstitutional, illegal, and contrary to the . . . holdings in *Apprendi v. New Jersey*[, 530 U.S. 466 (2000),] and *Waits v. State*[, 119 So. 3d 1024 (Miss. 2013)].

## ANALYSIS

### I.    *WEATHERSBY* APPLICATION

¶10.   Clayton's first assignment of error is based on the circuit court's denial of his motion for a directed verdict based on the *Weathersby* rule. In *Garth v. State*, 771 So. 2d 984, 987 (¶11) (Miss. Ct. App. 2000) (internal citation omitted), we explained:

> The *Weathersby* rule serves as a restatement of the conventional standard of review of a criminal trial court's refusal to direct a verdict of acquittal, that if the defendant and his witnesses are the only witnesses to the homicide and if their version of what happened is both reasonable and consistent with innocence and if, further, there is no contradiction of that version in the physical facts, facts of common knowledge or other credible evidence, then surely it follows that no reasonable juror could find the defendant guilty beyond a reasonable doubt. However, if there are circumstances shown in the evidence which materially contradict the defendant's version of self-defense, the jury is not required to accept his version, but may in determining guilt or innocence consider his version of self-defense along with conflicting evidence and any unfavorable inferences therefrom.

According to Clayton, he was the only eyewitness to the shooting of Alice, he consistently testified that he acted in self-defense when Alice came at him with a knife, and there was no evidence contradicting his version of the events. Therefore, Clayton asserts that the circuit court erred in denying his request to have the *Weathersby* rule applied, which would have resulted in a directed verdict in his favor.

6

¶11.    "[I]t is a rare case that satisfies the requirements of the rule in *Weathersby*." *Garth*, 771 So. 2d at 987 (¶10).  And we find that the circuit court was correct in finding that the *Weathersby* rule was not applicable to the present case.  The Mississippi Supreme Court has stated that, "if the defendant's testimony 'satisfies all the elements of murder or manslaughter, the defendant would not be entitled to a directed verdict of acquittal, as this testimony would be the basis for a valid conviction,' and the *Weathersby* rule would not apply."  *Booker v. State*, 64 So. 3d 965, 970-71 (¶17) (Miss. 2011).  Mississippi Code Annotated section 97-3-35 (Rev. 2014) defines manslaughter as: "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense[.]"

¶12.    A jury could reasonably believe that Clayton's version of the incident satisfied the elements of manslaughter, because a jury could have found that Clayton was not acting in necessary self-defense when he shot his wife with a shotgun.  Clayton testified that he shot Alice after she came at him with a knife.  However, it was Clayton who brought a gun to a knife fight.  Clayton pursued Alice into a closed bedroom, all while knowing that Alice had a knife and had even struck him with the knife several minutes prior to the shooting.  A jury could reasonably conclude that the time Clayton spent to retrieve the loaded shotgun from the closet, and the use of the shotgun to "bluff" his way into the room for his church shoes, were unreasonable and were not actions in necessary self-defense.

¶13.    Additionally, while Clayton did turn himself in to the police shortly after the incident, he never called 911 or checked to see if Alice was still alive before he left the home.  In

7

*Kiker v. State*, 130 So. 3d 554, 558 (¶13) (Miss. Ct. App. 2013), this Court addressed the inapplicability of the *Weathersby* rule, and we found that "[t]he jury could certainly have found this inconsistent with the way an individual would act if the shooting was actually in self-defense," since Julius Kiker never called the police after he shot his wife.

¶14.    Because Clayton's version of events satisfied the elements of manslaughter and because the reasonableness of Clayton's actions was a question for the jury, we cannot find that the circuit court erred in denying Clayton's request for a directed verdict based on *Weathersby*.  We affirm Clayton's conviction for manslaughter.

## II.    SENTENCE ENHANCEMENT

¶15.    Questions of law, which this issue involving the application of a sentence enhancement is, receive a de novo review.  *See Sallie v. State*, 155 So. 3d 760, 762 (¶7) (Miss. 2015).  Clayton argues that the circuit court improperly enhanced his sentence without having a jury decide every element of the firearm enhancement. We agree.

¶16.    The United States Supreme Court addressed sentence enhancements in *Apprendi*, 530 U.S. at 490,  when it stated: "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  In *Waits*, 119 So. 3d at 1030 (¶23), the Mississippi Supreme Court, relying on *Apprendi*, reversed David Waits's sentence due to the circuit court's error in applying section 97-37-37, and remanded for resentencing without the enhancement.  In doing so, it found that "the fact that Waits used a firearm during the

commission of the felony crime of manslaughter can be inferred only from the evidence, not the jury's findings." *Waits*, 119 So. 3d at (¶21).

¶17. Following the jury's verdict at Clayton's trial, the State requested Clayton be sentenced in accordance with section 97-37-37, which is a firearm enhancement that would add five years to Clayton's sentence. Section 97-37-37(1) provides:

> Except to the extent that a greater minimum sentence is otherwise provided by any other provision of law, any person who uses or displays a firearm during the commission of any felony shall, in addition to the punishment provided for such felony, be sentenced to an additional term of imprisonment in the custody of the Department of Corrections of five (5) years, which sentence shall not be reduced or suspended.

As the Supreme Court explained in *Apprendi*, because the application of section 97-37-37 increased Clayton's sentence for manslaughter beyond the statutory maximum of twenty years, a jury would have to decide whether the State proved each element of section 97-37-37(1) beyond a reasonable doubt. This included whether Clayton used or displayed a firearm during the commission of the felony.

¶18. The following jury instruction was given to the jury regarding manslaughter:

> If you find that the State has failed to prove all of the essential elements of the crime of Murder, then you may consider the lesser charge of Manslaughter.

> The [c]ourt instructs the jury that if you find from the evidence in this case that the Defendant, Quincy Lee Clayton, is not guilty of Murder, then you may proceed with your deliberations to determine whether the State has proved, beyond a reasonable doubt, all of the elements of the lesser crime of Manslaughter.

> However, notwithstanding this right, it is your duty to accept the laws as given by the [c]ourt; and if the facts and law warrant a conviction of the crime of Murder, then it is your duty to make such a finding uninfluenced by

9

the power to find a lesser offen[s]e. This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge of Murder[,] but does justify a verdict for the lesser crime of Manslaughter.

If you find from the evidence beyond a reasonable doubt that on June 21, 2009, Quincy Lee Clayton, in Jones County, Second Judicial District, State of Mississippi, did kill Alice Louise Clayton, a human being, without malice, in the heat of passion, by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, it is your sworn duty to find the Defendant, Quincy Lee Clayton, guilty of Manslaughter.

If the State has failed to prove any one or more of these elements beyond a reasonable doubt, then you shall find the defendant not guilty.

While this instruction does contain the phrase "by the use of a dangerous weapon," it does not describe what that dangerous weapon was. While there is no dispute that Clayton actually used a firearm when he shot Alice with a shotgun, the jury's verdict does not reflect such a finding. As the supreme court explained in *Waits*, 119 So. 3d at 1030 (¶21), while the fact that a firearm was used during the commission of the felony can be easily inferred from the evidence, it is impermissible to enhance a defendant's sentence under section 97-37-37 if a jury did not specifically find that a firearm was used.

¶19. Based on the jury instruction for manslaughter that was given, the jury did not specifically find, beyond a reasonable doubt, that Clayton used a firearm during the commission of the felony of manslaughter, and we reverse the application of section 97-37-37 and remand for Clayton to be resentenced without the firearm enhancement.

¶20. **THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF MANSLAUGHTER, AND SENTENCE OF TWENTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AND TO PAY A FINE OF $5,000 IS AFFIRMED. THE FIVE-YEAR SENTENCE ENHANCEMENT UNDER MISSISSIPPI CODE ANNOTATED SECTION 97-37-37**

10

**IS REVERSED, AND THIS CASE IS REMANDED FOR THE CIRCUIT COURT TO STRIKE THE FIREARM ENHANCEMENT FROM THE SENTENCING ORDER. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.**

**LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND DISSENTS IN PART WITHOUT SEPARATE WRITTEN OPINION.**